THOMAS RUTHERFORD, Respondent, v. OLLY WILLIAMS, Appellant.

1. *Fraud and Deceit—When ground of action for Damages.*—Where a person affirms either what he knows to be false, or what he does not know to be true, to the prejudice of another and for his own gain, he must answer in damages. But general fraudulent conduct, general dishonesty of purpose, or a mere general intention to deceive, amount to nothing unless they are connected with the particular transaction complained of and are shown to be the very ground on which the other party acted and on which the transaction took place, and he must have been actually deceived and defrauded by the representations made. Nor can damages be recovered for the breach of a mere gratuitous promise of favor, or for the consequence of undue confidence or want of prudence in affairs, or for oppressive conduct in foreclosing a mortgage under a power of sale, where the requirements of the contract have been pursued.

Rutherford v. Williams.

And the damage resulting from the fraud or misconduct must be the direct and immediate consequence of the wrongful act.

2. *Courts of Equity—Relief—When granted.*—Relief by a court of equity is confined to instances of fraud and misrepresentation by one party, touching some matter of interest, contract, security, mortgage, or conveyance, or property of some kind, in respect of which the other party is going to deal on the faith of representations made as to the truth of facts, whereby he is induced to act and deal not only to his own injury and loss, but to the gain of the party who makes the false representation or practices the fraud and deceit. In these cases relief is administered in general for the purpose of annulling the contract, conveyance, or instrument, and subjecting the property so acquired to the purpose of making such representations good; sometimes even to compel the party to make up any deficiency in money, by way of compensation or damages, when the property itself proves insufficient or cannot be reached.

3. *Trial—Issues—What left to a Jury.*—The question of fact whether certain promises or assurances were fraudulently given and were the sole ground of the plaintiff's action, to his injury and loss and to the gain of the defendant, would more properly be submitted to the jury upon an issue directed to that question.

4. *Frauds—Resulting Trusts.*—A party who has acquired property or gained an advantage by means of his fraudulent acts should be declared a trustee for the benefit of him who is injured by such fraud.

5. *Equity—Grounds for Relief.*—To entitle a party to relief in equity, there must be some ground for specific relief beyond a mere claim for damages or for the payment of money.

6. *Equity—Relief—How administered.*—Where there is any fraud touching property, courts of equity will interfere and administer a wholesome justice in favor of innocent persons who are sufferers by the fraud, without fault on their side, by converting the offending party into a trustee and making the property itself subservient to the proper purposes of recompense by way of equitable trust or lien.

7. *Courts of Equity—Equities of Redemption.*—Courts of equity will require that the power of disposing of equities of redemption shall be exercised in all fairness and integrity.

8. *Purchaser—Mortgagee—Redemption of Property.*—When the beneficiary or mortgagee becomes himself the purchaser, and there is any fraud touching the sale, he will be considered a mere mortgagee in possession, and the grantor will be entitled to the rights of a mortgagor and be allowed to redeem the property by paying the debt and interest. But the purchaser will be considered the owner of the property until his debt is fully paid.

9. *Fraudulent Sales—Proceeds.*—Where a fraudulent grantee of lands, which would have been subject to a trust in his hands, has sold the lands and converted them into money, the proceeds of the sale will be considered in equity as a substitution for the original property, and be subjected to the same trust.

10. *Usurious Contracts—Equity.*—Even where the statute makes an usurious contract void, equity will aid the borrower only upon condition of his paying what is *bona fide* and really due—Ransom v. Hays, 39 Mo. 445, cited and affirmed.

11. *Damages—Jury—Master in Chancery*—Mere damages for an injury or a breach of a contract must be assessed by a jury at law; but a compensation for beneficial and lasting improvements or profits made may be safely ascertained before a master, or upon an issue directed, at discretion. The case must be one admitting of definite compensation, to be estimated in damages.

12. *Equity—Decree—Account.*—Where there is an equity for relief and an account may properly be taken, though the court cannot decree the plaintiff a recompense in damages for his loss, it may substitute an account of the defendant's profits.

### *Appeal from St. Louis Circuit Court.*

*Krum, Decker & Krum,* for appellant.

I. This is not an action of assumpsit, because it is not founded on any agreement either express or implied. Assumpsit lies to recover damage for the non-performance of a parol or simple contract. An action of assumpsit cannot be sustained unless an express agreement is shown, or a state of facts is shown from which an agreement may, under the law, be implied; and in either case a sufficient consideration for the undertaking must be shown— 1 Chitty Plead. p. 88 ; Cutter v. Powell, 2 Sm. Lead. Cases, 13 ; 11 Wend. 67.

2. It is not a special action on the case. Case lies to recover damages for wrongs not committed with force actual or implied— where the injury is not immediate but consequential—1 Chitty Plead. 134.

3. It is not a case in equity for *an account*. A bill in equity for an account must be founded either on matter of apportionment, contribution, rents and profits, partition, dower, or marshalling of assets, etc.—1 Story Eq. p. 423, §§ 459, 460.

4. It is not a case for relief in equity against fraud, either actual or constructive—1 Story Eq. 197–261.

5. If this be an action *for deceit,* the judgment is erroneous, because damages only can be recovered in an action on the case for deceit.

II. The court below erred in admitting, against the objection of the defendant, parol evidence in respect to the alleged agreement of the defendant not to cause the land in question to be sold under the deed of trust until the return of the plaintiff from Cali-

fornia. The alleged agreement is *concerning lands*, and there is but one mode of proving such an agreement in this State, and that is *by a writing*.

III. If the action is founded on a parol agreement, no consideration was shown to support it. It is simply *nudum pactum*.

*Gantt & Burnes*, for respondent.

I. The statute of frauds nowhere deprives of his action against a fraudulent trickster a man who has been injured in respect to his title to real estate by reliance on a verbal promise. In the case at bar the wrong and injury effected were accomplished by procuring the absence of the plaintiff from the State of Missouri. The plaintiff is enticed away, and, in his absence, the meditated wrong is accomplished. In what respect does the misconduct of the defendant here differ morally from imprisoning the plaintiff falsely during the time necessary for advertising and selling his land?

II. The promise of Williams was founded upon a proper consideration. There were mutual promises, or, what is the same thing, a promise by Williams on condition that Rutherford would do a certain thing : that is, go to California.

III. It is permissible for a jury in such a case as the present to give interest on a balance struck, of their own discretion. The case of Dozier v. Jerman, 30 Mo. 216, establishes this.

IV. The special finding of the facts was proper—Bacon's Abr. and 3 Co. Litt. p. 493 (book III, chap. ix) ; 3 Thomas Coke, p. 392 ; Farwell v. Price, 30 Mo. 587.

HOLMES, Judge, delivered the opinion of the court.

The petition states in substance that the plaintiff, on the 26th day of March, 1860, obtained a loan of money from the defendant, and secured the same by a principal note for the sum of five thousand five hundred dollars, payable at three years from date, with separate notes for the semi-annual interest, together with a deed of trust on his farm, of the value, as alleged, of twenty-five thousand dollars, containing a power to sell on failure of pay-

ment; that usurious interest was retained by the defendant out of the sum loaned; that some two years afterward, the interest notes then due not having been paid, and the land being liable, according to the terms of the deed, to be advertised and sold, under the power, to pay the whole indebtedness, the plaintiff had several interviews with the defendant, and informed him of his desire to go overland to California, where he expected to borrow the money necessary to pay the debt from one James L. Jennings, and proposed to go, provided that the defendant would suspend all proceedings for a sale under the deed of trust until he should return, as he expected, in about five months, and that the defendant promised to do so; that the plaintiff, relying upon the promise and good faith of the defendant, departed for California, leaving his family on the place, with a man to take care of the farm; that only some ten days after he was gone, the defendant, in pursuance of a fraudulent intent and design to deceive and entrap him, to his injury, and to obtain the property at a reduced price by a sale under the deed in his absence, caused the trustee to advertise and sell the property, and became himself the purchaser, for the sum of five hundred dollars, on the 22d day of May, 1862; and that, on the 9th day of September, 1863, the defendant sold and conveyed the same, for the sum of ten thousand five hundred dollars, to a *bona fide* purchaser, without notice of any fraud in the sale or of any equity affecting the title. There were allegations, also, of fraudulent conduct and unfairness at the sale, on the part of the defendant, with a purpose of deterring bidders, and in continuation of the preconceived design to defraud, by holding out the idea that he was buying in the property for the benefit of the plaintiff or his family. The prayer was that the defendant might be charged in account with the sum of twenty-five thousand dollars (the value of the farm), together with rent from the day of sale, and be credited with four thousand and six dollars, and ten per cent. interest from the date of the notes, and that the defendant be adjudged to pay the plaintiff the sum found due upon such accounting.

The defendant demurred to the petition, for the reason that it did not state facts sufficient to constitute a cause of action. The demurrer being overruled, an answer was filed substantially

denying all fraud and deceit, and traversing the main facts on which the plaintiff claimed to be entitled to relief. Motions for a new trial and in arrest of judgment were made and overruled.

The case was submitted to the court, sitting as a jury, for a trial of the issues, and judgment was rendered for the plaintiff, upon a special finding of the facts, stating therein the amount charged, for the value of the farm, at $15,000, and the credits allowed for debt and interest; and execution was awarded against the defendant for the balance of $8,087.15.

The petition is certainly not very explicit as to the principles of law or equity on which the action was to be founded, nor very accurate as to the kind of relief to which the plaintiff might be entitled. Evidently it was not intended to state a cause of action at law for damages, whether founded upon a breach of contract or upon fraud and deceit resulting in damages merely. It states a case of equitable jurisdiction, if anything; yet the relief prayed for is not exactly such as a court of equity would grant upon the case stated. It is not easy to say whether the case was tried in the court below as an action at law or as a proceeding in equity; but the relief given was not such as equity could grant. It has been argued here as if it might be either or both. The record exhibits such a blending of law and equity, both as to principles and procedure, that we have had great difficulty in determining what to make of the case. This court has had occasion already, in several cases, to animadvert upon the error of confounding law and equity, not only as to principles, but as to the mode of proceeding, as if no distinction any longer existed.

We are inclined to think the demurrer was properly overruled. The petition could not be treated as an action at law. Whether or no it sufficiently states a case for equitable relief, is a question of some difficulty. It has been held, under the practice act, that the relief sought is an essential part of the petition. It is, at least, not clear that the prayer in this case might not include such relief as could possibly be granted on the case made. As to the case stated in the petition (which is taken to be entirely true on demurrer), our opinion is that it might come within the jurisdiction of a court of equity for granting relief under the head of

fraud, if a clear case of fraud and deception, as alleged, were proved to the entire satisfaction of the court, or were established by the verdict of a jury—the material facts on which the fraud depends being doubtful upon the evidence.

It has been said by high authority to be a principle of universal law that fraud and damage coupled together will entitle the injured party to relief in any court of justice—Bacon v. Bronson, 7 Johns. Ch. R. 194. At law, fraud without damage, or damage without fraud, will not found an action; but where both concur an action will lie—Pasly v. Freeman, Sm. Lead. C. 55, § 2. There can be no doubt that wherever fraud and deceit resulting in damage can be proved to the satisfaction of the jury, an action at law can be maintained. The cases are numerous to the effect that where a person affirms either what he knows to be false, or what he does not know to be true, to the prejudice of another and for his own gain, he must answer in damages; but independently of any contract no one can be made responsible for representations of this kind unless they be fraudulently made — Taylor v. Ashton, 11 Mees. & W. 400; Stone v. Denny, 4 Met. 151; Allen v. Addington, 7 Wend. 9; 2 Kent's Com. 489, n. *b.*)

But general fraudulent conduct, general dishonesty of purpose, or a mere general intention to deceive, amount to nothing unless they are connected with the particular transaction, and are shown to be the very ground on which the other party acted, and on which the transaction took place; and he must have been actually deceived and defrauded by the representations made — Atwood v. Small, 6 Cl. & Fin. 447. He is himself alone responsible for his own weakness, folly, inattention, want of caution, or imprudence, and for his own necessities and misfortunes. Nor can damages be recovered for the breach of a mere gratuitous promise of favor, or for the consequences of undue confidence or want of prudence in affairs, or for oppressive conduct in foreclosing a mortgage under a power of sale where the requirements of the contract have been pursued; and the damage resulting from the fraud or misconduct must be the direct and immediate consequence of the wrongful act—Randall v. Hazelton, 12 Allen, 412.

The jurisdiction in equity is concurrent, in the exercise of discretion, where it is necessary and fit, and where the law cannot give so speedy and effectual a remedy, though relief may be had at law — Clifford v. Brooke, 13 Ves. 131.   The cases illustrative of the application of this jurisdiction in equity would seem to show very clearly that the relief is confined to instances of fraud and misrepresentation by one party, touching some matter of interest, contract, security, mortgage, or conveyance, or property of some kind, in respect of which the other party is going to deal on the faith of representations made as to the truth of facts, whereby he is induced to act and deal not only to his own injury and loss, but to the gain of the party who makes the false representations, or practices the fraud and deceit; and in these cases relief is administered in general for the purpose of annulling the contract, conveyance, or instrument, and subjecting the property so acquired to the purpose of making such representations good, but sometimes even to compel the party to make up any deficiency in money, by way of compensation or damages, where the property itself proves insufficient, or cannot be reached; but where there is no special equity as the ground of relief, or there is an adequate and complete remedy at law, and the case is one of fraud and deceit merely, resulting in damages only to the injured party, without any such acquisition of gain to the other party, and not affecting any contract, security, conveyance, or property as such, a court of equity will dismiss the bill and remit the plaintiff to his action at law and a trial by jury — Evans v. Bicknell, 6 Ves. 174; Burrowes v. Locke, 10 Ves. 470; Clifford v. Brocke, 13 Ves. 131; Bacon v. Bronson, 7 Johns. Ch. Rep. 194; Chesterfield v. Jansen, 2 Ves. Sr. 125; Neville v. Wilkinson, 1 Bro. Ch. 543; Pearson v. Morgan, 2 Bro. Ch. 389; 1 Story Eq. Jur. §§ 191–203, § 439.

If the proofs in this case had fully sustained the petition, or shown a deliberate scheme of fraud and deceit designed to induce the plaintiff to go away in order that the defendant might get the property at a sacrifice in his absence, in violation of express promises or plighted faith, or upon false representations made, or had clearly established the fact that deceitful inducements had

been held out to him, or that any such promise or understanding or misrepresentation had been made, and were acted upon by the other as the sole ground of his proceeding, with or without further proof that there had been fraudulent conduct or unfairness at the sale, and that an actual fraud had been accomplished to the injury of the plaintiff, and that by means thereof the defendant had acquired this property, we should certainly have been disposed to sustain this petition and grant such relief as the case made might justify upon the principles upon which the court acts in administering relief in such cases. That the plaintiff has suffered some considerable loss in the actual sacrifice of his property, leaving the debt still unpaid, would appear to be very true; but that this loss has been the result of false representations or promises, or of a fraudulent breach of any positive agreement or of any distinct understanding, or of any deliberate scheme of fraud and deceit, on the part of the defendant, rather than the consequence of his own imprudence, urgent necessities, and inexcusable delay in seeking relief, when effectual relief might have been granted, the evidence is very far from being clear, positive, and entirely satisfactory.

There was evidence that the farm was worth about fifteen thousand dollars, though some of the witnesses stated that it would not have sold in 1862 for more than eight or ten thousand dollars ; and the whole indebtedness with interest amounted to some eight or nine thousand dollars. The witness who was present at the first interview says distinctly that the defendant then promised to wait, only on condition that the interest notes were paid up. There was no offer to do this. The defendant states positively that he never at any time promised or engaged to do anything more than this. There is nothing in the testimony of the witness at the other interview that contradicts the truth of this statement. He says nothing on this very essential point. His statements in relation to a parol agreement not to sell under the deed are vague and uncertain as to what was said or promised. The testimony of the plaintiff himself is still more indefinite and unsatisfactory as to any positive understanding or agreement. His statements are at variance with the other witnesses' in several

important particulars, and are of such a character as to throw great doubt on his credibility.

One of these witnesses says that the plaintiff (at the second interview) informed the defendant of his purpose to go to California, where he expected to get money from his friend to pay the debt, and that the defendant said "he might go," that "he need not be uneasy," and that "nothing would be touched until he came back," but that he (witness) should stay on the place and take care of the farm; but he says, also, that no bargain was made nor any time mentioned when he was to return; nor is he able to state that there was any more distinct promise than this, not to sell under the deed of trust. The plaintiff himself can say no more than that the defendant said "he might go," and that "his family and property should not be molested;" and thereupon, he says, he made his arrangements to go, and went the next day.

He states that no time was agreed on when he was to come back. The defendant appears to have been anxious that, if he went away, some person should be left on the farm to take care of the place in his absence; and it may very well admit of serious doubt whether his expressions may not have been (as he avers) upon condition that the interest should be paid up, and may not have referred as much to the care of the farm as to any distinct agreement on his part not to proceed under the deed of trust, within any given time. Another witness thinks some time was referred to, but cannot say whether it was one or two years. That the defendant should agree not to sell until he came back (an event that might never happen), would be highly improbable; but it might be reasonable to infer that it was understood that he should have time to go and return.

No false representation of any past event, or any cotemporaneous fact, is proved; there was nothing strictly of the nature of a misrepresentation. There was no other proof of any promise or of any definite agreement to refrain from selling under the deed of trust than what is contained in the above expressions; though another witness states that he asked the defendant, in a casual conversation with him, after this suit was begun, if he had

ever made any such promise, and he answered that he might have said something of that kind, but did not think it amounted to anything. This is a vague and unreliable kind of evidence, but it may be taken as some confirmation of the truth of what the other witnesses say, so far as that goes.

It does not appear that the plaintiff went to California at the instance or solicitation of the defendant, nor that he held out any inducements to him to go, otherwise than as above stated. There was no proof of any contract. It is needless to say that, as a contract, it was simply *nudum pactum*. The defendant received no advantage, the plaintiff no detriment, at the instance of the other. It may be said to admit of some doubt whether the plaintiff may not have relied upon the voluntary indulgence of the other, or may not have incautiously suffered himself to be lulled into a feeling of security beyond what was understood or agreed to by the other. The debt was already due by the terms of the instrument. The plaintiff knew that it was in the power of defendant to proceed and sell whatever he pleased, and ordinary prudence might have dictated the propriety of leaving his business in charge of some competent agent, who could have looked after his interests in his absence. It seems not to have been in his power to prevent a sale by payment of the debt or interest; but, though unable to prevent a sale, his personal influence might have been more effectual than the efforts of any agent in procuring bidders, who might have saved the property from sacrifice or made it bring something near the amount of the debt. The property appears to have been worth nearly double the debt, and it must be conceded that his own absence increased the certainty of his loss, and that he was really injured if there was any fraud.

He received information of the sale soon after his arrival in California, and as early as the ensuing month of July. He made no further efforts to get money in California. It appears that he was unable to raise the necessary amount when he got there. No proceeding was instituted for the purpose of having the sale set aside on any ground of fraud or unfairness in the sale, while a resale might have been ordered, or a redemption allowed, on

satisfactory proof being made; and there was no attempt at any legal proceedings until more than a year after the property had been sold (after the lapse of more than a year from the day of the first sale) and conveyed to the *bona fide* purchaser for full value, without notice of any fraud, and so had been passed away wholly beyond his reach.

The allegations of fraud at the sale are not supported by the proofs. The evidence shows nothing amounting to fraudulent conduct at the sale. One witness states that he urged the defendant to postpone the sale on account of the plaintiff's family, and that the defendant said, in private conversation with him, that he could protect them, but, "not that he would;" and there was no evidence whatever of any attempt to deter him or others from bidding, nor of any unfairness beyond a hard disposition to enforce a sale in a time of depression and under circumstances the most unfavorable for the plaintiff, and so buy in the property for a song, leaving the greater part of the debt still unsatisfied, and thus sinking the plaintiff, perhaps, into utter bankruptcy. On the other hand, there is much ground to infer that the plaintiff was not willing to depart on his journey until he had received some positive assurance from the defendant that his property would not be sold before he should have time to go and return. Failing to get this assurance at the first interview, it would appear that he went again and took with him a friend who could be a witness. It is rendered highly probable that he regarded the expressions used as amounting to such an assurance, and that he acted upon it. If really given to that effect, and without condition, he might justly consider them as equivalent to an express promise not to sell until his return, within the time supposed. In such case the defendant should be presumed to have intended them as such; otherwise, he should have said, distinctly, *No!* to the proposition. If they were used, and not so intended, his conduct was dishonest — was bad faith (*dolus malus*), and a fraud. It was a doctrine of the civil law (cited by Story with approval) that there is ground to charge a man with dishonesty for not having declared his right, when he was under an obligation to do it, by which the other is misled; and it may be deemed

consent—1 Story Eq. Jur. § 394. The jurisprudence of an enlightened age may be expected to exhibit as high a tone of morals as that of the ancient Romans, at least. The parties here stood in the relation of a mortgagor and mortgagee, and upon this superinduced ground equity in aid of general morals will not suffer a party standing in a situation of which he can avail himself against the other to derive advantage from that circumstance, for it is founded on a breach of confidence ; and it is a general principle that, "if a confidence is reposed, and that confidence is abused, a court of equity will grant relief—1 Story Eq. Jur. § 308 ; Gartside v. Isherwood, 1 Bro. Ch. 560.

But we have great difficulty in saying, upon the whole evidence, such as it is, that a fraud or breach of confidence of this nature ought to be considered by the court (without the verdict of a jury) as satisfactorily established. The question of fact whether such promises or assurances were fraudulently given, and were the sole ground of the plaintiff's action, to his injury and loss and to the gain of the other, would more properly have been submitted to a jury upon an issue directed to that question—Ward v. Turner, 2 Ves. Sr. 431.

In Gartside v. Isherwood, the question of fact whether a confidence has been reposed and abused was sent to a jury, and it was said that "where a matter of fact is necessary to be considered, and there is doubt upon the evidence of the fact, then it is proper to send a neat matter of fact to the decision of a jury." In Evans v. Bicknell, where the Chancellor was not satisfied with the proof of the fraud, it was ordered that the bill be dismissed unless the parties preferred to have an issue made upon the question of fraud, to be tried by a jury. In other cases, the relief prayed was granted only when the fraud on which it depended had been ascertained by the verdict of a jury ; and it was said, in Clifford v. Brooke, that a probable fraud was not enough, but that, as at law, the "action must stand upon plain, clear fraud and deception, proved to the satisfaction of the jury"—Haycraft v. Creasy, 2 East. 92.

We are not prepared to say that the fraud and deception here alleged are proved to our satisfaction; but if they were so proved,

or were established by the verdict of a jury, we are strongly inclined to think that the matter would come within the principles on which the court acts in granting relief under the head of fraud, by declaring a party who has acquired property or gained an advantage by means of his fraudulent acts to be a trustee for the benefit of him who is injured by such fraud—Brown v. Lynch, 1 Paige R. 147.

In Young v. Peachy (2 Atk. 256), the party had acquired the title, under a parol agreement, to hold it for the benefit of the other. The Chancellor said there was no resulting trust, but that relief would be granted, the proof being clear and satisfactory, by holding him to be a trustee for the benefit of the injured person, under the head of fraud. His conduct, in violation of his promise, being *dolus malus*, equity would compel him to make it good—Strickland v. Aldridge, 9 Ves. 516; Drakeford v. Wilkes, 3 Atk. 540. In Boyd v. McLean (1 Johns. Ch. R. 582), where a resulting trust was decreed upon a parol agreement, clearly proved against the denial of the answer, the Chancellor did not fail to remark upon the danger of admitting such testimony, contrary to the policy of the statute of frauds, unless it were entirely satisfactory. In these cases the proof was clear that a title or interest had been acquired under a parol agreement or understanding that it was to be held for the benefit of the other, and relief was granted by declaring the party a trustee, on the ground that unless he were compelled to make his promise good the statute of frauds would thereby be made the means of accomplishing a fraud. There was a clear breach of confidence, and bad faith, in violation of a parol promise (which was in itself *nudum pactum*), by means of which the party had acquired property which, by the terms of the agreement, should belong to the other. The agreement or understanding which this evidence tends to prove was not in terms to the effect that the defendant would hold the property for the benefit of the plaintiff, nor was there any undertaking to buy in the property at the sale for his benefit. But the agreement, if proved as alleged, related to this property, in which the plaintiff had the interest of a mortgagor, and the defendant that of a mortgagee, and was to the

effect that he would not direct a sale of that property within a certain time; and in violation of that understanding he directed a sale by which the title was transferred to himself. And it may very well be said that by means of his fraud he has acquired property which, if his promise had been kept, would have continued to belong to the plaintiff, subject only to the debt secured. And if the fraud and deception were satisfactorily established, we think the case would come fully within the principle on which a party will be declared a trustee under the head of fraud.

But there must be something more than a mere violation of a parol agreement, or a breach of contract, for which damages may be recovered at law, or a fraud and deceit resulting in damage only, to entitle the party to relief—Robertson v. Robertson, 9 Watts, 32; Haines v. O'Connor, 10 Watts, 318. There must be some ground for specific relief beyond a mere claim for damages, or for the payment of money. Relief will not be granted in equity for damages merely, or for the payment of money, where no other kind of relief is required or can be given, and where there is an adequate remedy at law—Hardwick v. Forbes, 1 Bibb, 212; Waters v. Mattingly, 1 Bibb, 244. In Clifford v Brooke (13 Ves. 131), where the case was purely an action for money, the Chancellor said he doubted extremely whether he ought to make such a decree even if the evidence came up to the charges, and, all other ground of relief failing, he refused a decree and left the plaintiff to his action at law. But where there is any fraud touching property, the court will interfere and administer a wholesome justice in favor of innocent persons, who are sufferers by the fraud without fault on their side, and it will be done " by converting the offending party into a trustee and making the property itself subservient to the proper purposes of recompense by way of equitable trust or lien"—2 Story Eq. Jur. § 1265.

So far as there is any evidence here of fraud and deception, it concerns the alleged promise not to sell. It cannot be claimed that there was a distinct and positive agreement to that effect, but the circumstances, the expressions used, and the conduct of the parties, were such that a jury might reasonably infer, perhaps, that

there was in fact such an understanding, which had the effect to mislead the plaintiff, if not expressly intended to procure his absence, whereby the defendant might be enabled to get the property at a reduced price, at a sale enforced contrary to the terms of the agreement; and this, as between them, might justly be said to have been a fraud touching the sale of this property. The sale itself was made by the trustee strictly in pursuance of the power given in the deed, and upon due notice, and there is no proof of any fraud practiced at the sale. The sale would be valid as to an innocent purchaser; its validity is affected only as between these parties. The bad faith of the defendant consists in his directing the trustee to proceed in the exercise of his power to sell, when he had agreed, or led the other to believe, that he would not call the power into requisition in his absence. The injury done to the plaintiff consists in his having been fraudulently induced to go away, whereby he was the less able to attend to his business at home, and suffered loss therein; and it may be said that by means of this fraud and deception the defendant acquired the legal title to the property for a trifling sum, when the plaintiff, if he had been present, might have protected his property from so great a sacrifice.

In Clarkson v. Creely (40 Mo. 114), an agent of the grantor in the deed of trust had called upon the beneficiary and informed him that he would be ready to pay the debt secured whenever it should become necessary to proceed under the power to sell; and his agreement to do nothing until he should let the other party know, being distinctly proved, a redemption was allowed on the ground that the acts of the party as clearly operated a fraud for his own benefit, in violation of the agreement, as if it had been a trap expressly set and designed to cheat. It is a general principle that a court of equity will look with a jealous eye upon these harsh modes of disposing of the equity of redemption, and will require that the power shall be exercised in all fairness and integrity—Goode v. Comfort, 39 Mo. 313. Where the beneficiary or mortgagee becomes himself the purchaser, and there is any fraud touching the sale, he will be considered as a mere mortgagee in possession, and the grantor will be entitled to the rights of a

mortgagor, and be allowed to redeem the property by paying the debt and interest; but the purchaser will be considered as the owner of the property until his debt is fully paid—Goldsmith v. Osborne, 1 Edw. Ch. 562. As between these parties, the defendant may be regarded as having acquired the title, subject to the right of redemption on a full satisfaction of the notes held by him, with interest, and as being a trustee for the benefit of the plaintiff to this extent and for this purpose.

But he has sold and conveyed the property to an innocent purchaser, and placed it beyond the reach of the plaintiff or of the court for his relief. In such case, the money received by him as the proceeds of the sale will be subjected in his hands to the same trust that the land itself would have been subject to if the title had remained in him. It has been held that where a fraudulent grantee of lands which would have been subject to a trust in his hands has sold the lands and converted them into money, the proceeds of the sale will be considered in equity as a substitute for the original property, and be subjected to the same trust—Bean v. Smith, 2 Mas. R. 252.

The same principle may be applied to this case. It goes upon the doctrine of conversion It does not rest upon any trust arising by agreement or intention of the parties, but upon a breach of trust in selling property which was subject to a trust in the hands of the vendor, and upon so much benefit received; and for this purpose the money is to be considered as the same identical property as the land sold and converted—Adams' Eq. 143. He must give a recompense in account to the extent of that value of the land.—Earl of Oxford's case (1 Ch. R. 13; 1 Jac. 1), 2 Lead. Cas. in Eq. by W. & T. 504.

It results from this, that the plaintiff would be entitled to relief upon this ground to the extent of the balance remaining of the sum received by the defendant from the sale of the property (which appears to have been ten thousand five hundred dollars), after deducting therefrom the full amount of the notes held by him, and interest thereon up to the date of the sale and conversion; and the plaintiff would be entitled to judgment for that balance, with interest from that date. The defendant must be

considered as having the right to pay himself out of the money when received, and to apply the proceeds to that purpose; and he remains a trustee for the balance only, for the use of the plaintiff. This is properly a matter of account, and can be definitely ascertained. The defendant would be accountable, also, for rents and profits while the estate remained in his possession.

It appears that the court below refused to allow the defendant, against the demand of the plaintiff, the excess of interest above six per cent., as usurious. An instruction was given to this effect, and the interest notes, as such, were not taken into the calculation. It was decided in Ransom v. Hays (39 Mo. 445) that a party who has once paid unlawful interest upon an usurious contract cannot recover it back. Even where the statute makes an usurious contract void, equity will aid the borrower only upon condition of his paying what is *bona fide* and really due, on the maxim that he who asks equity must do equity. The statute here does not make the contract void, nor does it exempt the borrower from paying the usurious interest. So far as it was illegal, the plaintiff is in the situation of a wrong-doer as well as the defendant, and equity will not relieve him—1 Story Eq. Jur. § 64 and § 301. Here the usury is to be considered as having actually been paid. The defendant had the right to pay himself in full out of the money received, and the plaintiff can have no deduction or allowance on account of the usurious interest so paid. In this respect the judgment was erroneous.

The relief administered in this judgment did not proceed upon the equity established as above, but upon the ground that compensation or damages was to be estimated as for the injury and loss sustained by the plaintiff by reason of the defendant's fraud and deceit. An instruction was given to this effect. Evidence was heard as to the value of the farm, and that value as found upon the evidence was taken as the basis of the account and as a measure of damages. This was a total departure from the principles of both jurisdiction and relief, on which the case depended. If there were no other ground of relief, and no other kind of relief to be administered than the payment of money by way of compensation or damages for the injury suffered by the plaintiff, for

which there would be an adequate remedy at law, the petition would be dismissed. Such damages have no resemblance to compensation in equity—Todd v. Gee, 17 Ves. 273 ; 2 Story Eq. Jur. § 794. In some cases of this kind, where the property itself can be reached for the purpose of relief, but proves insufficient in some certain amount, or where the equity concerns a liquidated demand, or a definitely ascertainable sum which the defendant is liable to make good, he may be decreed to pay such deficiency or such definite sum in money, by way of compensation or damages. In Bacon v. Bronson (7 Johns. Ch. R. 194), the defendant had received money which was subject to the equity more than sufficient to pay the plaintiff's demand, and the decree was that if the property itself did not realize the full amount to be paid he should make up the deficiency out of that money. In Evans v. Bicknell (6 Ves. 174), there was a special equity (if the fraud had been proved), that the defendant should make good the sum of £300 to the injured party. And in Burrowes v. Locke (10 Ves. 470), where there was no special equity, but only a naked claim for damages in money, the bill was dismissed.

The compensation so given is founded not upon an injury or loss suffered by the plaintiff, but upon an account of what the defendant has received, or is, under a special equity, bound to make good, the amount being definitely ascertainable before a master. In Copper v. Wells (Saxton R. 17) it was held that mere damages for an injury or a breach of contract must be assessed by a jury at law, but a compensation for beneficial and lasting improvements or profits made may be safely ascertained before a master, or upon an issue directed, at discretion. The case must be one admitting of definite compensation, and not a mere matter of arbitrary damages or a compensation to be estimated in damages — Adams Eq. 91, 109. Where there is an equity for relief, and an account may properly be taken, though the court cannot decree the plaintiff a recompense or damages for his loss, it may substitute an account of the defendant's profits—Adams' Eq. 219 ; 2 Story Eq. Jur. § 794, a; White v. Cuddon, 8 Cl. & Fin. 787–795.

Damages will not be awarded upon a breach of trust merely,

but only on account of all the profits made, though the party has sustained considerable damage or loss in respect of the property, of the thing itself—Ludlow v. Greenhouse, 1 Bligh, N. S. 57–8. Such is the nature of the case here. There are some peculiar cases of specific performance, and particular cases involving an inquiry of damages as incidental and subordinate to the relief to which the party is entitled in equity only, where there is no remedy at all at law in which an issue of *quantum damnificatus* may be directed—Pratt v. Law, 9 Cranch, 492–4; Coster v. Monroe Manufacturing Co., 1 Green Chan. R. 467; Fisher v. Kay, 2 Bibb, 434; Wiswall v. McGowan, 1 Hoff. Ch. 125; Todd v. Gee, 17 Ves. 273; 2 Story Eq. Jur. § 798. This is not such a case. There can be nothing like an open assessment of damages, in a court of equity, in a case of this kind. The evidence ascertains no certain amount which the court would be authorized to decree the plaintiff as compensation or damages over and above the balance of the money into which this property was actually converted. And upon the whole case we are inclined to think that this money furnishes the safer criterion of the actual value of the property at that time, and, at any rate, it must be taken as the basis of the account. If the plaintiff had applied for relief in time he might have been allowed, on satisfactory proof, to redeem his property on paying the debt. He must now take what the defendant is accountable for to his use as a trustee, if he can establish his right to anything in a court of equity. In this respect, also, the judgment was erroneous.

It appears by the record that the cause was submitted to the court, sitting as a jury, for a trial of the issue. No particular issues were directed or made up for trial by jury. Such submission of a case in equity can be regarded only as a hearing before the court, upon the pleadings and evidence in the cause. The case is to be considered here in like manner, upon the pleadings and evidence. The instructions are important only as indicating the principles upon which the court acted in giving judgment. We have said that the question of fact whether any agreement, or any expressions amounting to a distinct understanding, to suspend a sale for any given time, was made and acted upon to the injury

of the plaintiff, and in reference to which the conduct of the defendant was fraudulent in intent or effect, or amounted to bad faith, would more properly have been sent to a jury on a proper issue of fact, upon evidence so doubtful in character. We are not satisfied that it was so clear and decisive as to warrant the finding of the court; it would certainly be more satisfactory if the fact of fraud and deception were established by the verdict of a jury.

After much deliberation we have not been able to find any ground of principle or authority on which the judgment as rendered can be sustained; nor do we see our way clear for rendering such judgment here as should have been given in the court below. We think the ends of justice will be better answered by remanding the cause for a new hearing, in accordance with the principles indicated in this opinion.

Reversed and remanded. The other judges concur.