BLANCHARD vs. DOERING and another.

*Equity — Injunction.*

Where the terms of a deed, as heretofore construed by this court (21 Wis. 477), required the 150 square inches of water granted to defendants by plaintiff's ancestor to be measured at the side of the main race, but a side

flume, sixteen feet wide and as deep as the race, had been constructed and used with the full knowledge and consent of the grantor, without any gate at the side of the race, and the water had for many years been measured at the discharge of the mill, and defendants had meanwhile, with the plaintiff's knowledge and without any objection, erected a new and expensive mill with American turbine wheel, which mill would be rendered nearly valueless by measuring the water at the side of the race: *Held*, that equity would not require it to be thus measured, nor restrain its continued use in the manner established with the grantor's consent.

APPEAL from the Circuit Court for *Jefferson* County.

Application for an injunction. A statement of the facts upon which the application was based, and the terms of the deeds under which defendants claim, will be found in 21 Wis. 478–82. The facts put in evidence upon the subsequent trial of the cause, so far as important here, are stated in the opinion, *infra*. The present appeal was taken by defendants from a judgment of the circuit court granting the relief demanded by the plaintiffs.

*Orton & Mulberger* and *D. F. Weymouth*, for appellant, to the point that the plaintiff was estopped from denying defendant's right to draw and measure the water as is now done, cited 10 S. & R. 63; 14 id. 267; 4 id. 241; 4 Watts, 317; 4 Barr, 353; 1 Johns. Ch. 353; 15 Wend. 380; 8 id. 480; 2 Caines, 87; 3 Green's Ch. (N. J.) 116; 2 id. 116; 10 Ohio, 288; 3 Carter, 108; 2 Gill, 221; 20 N. H. 114; 13 Vt. 150; 12 Pick. 193; 2 R. I. 214; 10 Barn. & Cress. 181; 6 Adolph. & E. 469; Ang. on W. C. 309, 310, 318, 319 *et seq.;* Smith's L. C., Am. note, 531.

*Enos & Hall*, for respondent. [No brief on file.]

Dixon, C. J. When this case was up before, on an appeal from an intermediate order modifying the injunctional order first granted (21 Wis. 477), it presented merely a dry legal question as to the proper construction of the words of the deeds under which the defendants hold their water right. The cause

has since been tried on its merits, and, although very much of the evidence offered by the defendants was excluded, yet enough was admitted to show, on this appeal from the judgment, some of the circumstances which surround the claim of the plaintiff. Of these circumstances, the most material are those proved by the witnesses Green and Gohres. Green was a former owner of the premises now occupied by the defendants. He became such owner in the year 1844, with the right to take and use sixty-four square inches of water for the purpose of propelling machinery on the premises; and, together with the other part owner, built a mill thereon, in that year or the year following, which they continued to own and use until the year 1853 or 1854, when they sold the premises, with the right to draw the water; which title, through mesne conveyances, has now become vested in the defendants. The sixty-four square inches of water, originally conveyed to Green and his co-partner, is parcel of the one hundred and fifty square inches to which the defendants are now entitled. After testifying to an enlargement of the flume through which the water was taken, by agreement with the proprietors of the dam and water power, in the year 1850, so that the same was sixteen feet wide inside, he says, that he left the possession of the premises in 1853 or 1854. At the time he left he had *the same flume now used by the defendants, and the water was measured at the discharge.* He does not know whether he sold out before Blanchard bought or not. Blanchard bought about the time he sold out. He (witness) *continued to use the water from the time he bought until he sold out, in the same way.*

Gohres testifies, that he is acquainted with the present *side* flume at the defendants' mill. He built a portion of it in 1862. The same front part built by the witness, and the flume, are there yet. At the time he built it, he worked for Hiram W. Blanchard, the father of the plaintiff, *who paid him for it, and ordered him to build it.* It was built for the purpose of con-

veying the water from the main race to the defendants' mill and wheel. *He did not build a gate to that side flume at the side of the main race. Mr. Blanchard, when it was completed, examined it, and was satisfied with it.* Witness does not know why Mr. Blanchard caused it to be built, nor when a gate was put in it. The reason why Mr. Blanchard caused this side flume to be built appears from the testimony of the defendant *Doering*, but need not be commented on here.

Other evidence to the same effect as the above was offered by the defendants, but was excluded.

It furthermore appears from the whole case, that no objection was taken to the mode of measurement which has always heretofore prevailed, namely, *at the place of discharge*, until about the time this action was commenced, or until the year 1864, when the defendant *Doering* was engaged in rebuilding his grist-mill, which had been destroyed by fire. The present plaintiffs then for the first time raised the objection.

Upon these facts, a question arises as to the degree or kind of acquiescence on the part of the proprietors of the dam or principal power, in the measurement or use of the water by the defendants or those under whom they claim, which will preclude the application of the equitable remedy by injunction to restrain or prevent such measurement or use. The general doctrine of courts of equity upon this subject is well understood. This court has had frequent occasions to consider it in cases of this nature. Long acquiesence is a bar to the remedy, and especially where it will be productive of hardship and oppression, or public or private mischief. *Sheldon v. Rockwell*, 9 Wis. 166; *Cobb v. Smith*, 16 id. 661; *Crosby v. Smith*, 19 id. 449; *Pettibone v. Railway Co.*, 14 id. 443. In this case there has been an acquiescence for nearly, if not quite, twenty years. It does not appear that the father of the plaintiffs, to whose rights they succeed, and who became the proprietor of the dam in 1854, and so continued until the time of his death

in 1863, ever raised the slightest objection. On the contrary, it appears that as late as the year 1862, he put in the side flume at the defendant's mill, with no gate or other means of measuring the water before it reached the defendant's wheel, thus consenting directly, so far as any act of his could show consent, to the measurement at the wheel. This, too, was at or after the time the defendant *Doering* acquired his right to the other eighty-six inches of water by purchase from Mr. Blanchard himself. Could the father of the plaintiffs, after such acquiescence on his part, and on the part of his grantors, and after he had thus erected the flume by which the water was conveyed to the defendant's mill, have maintained a bill to restrain the defendant *Doering* from using the prescribed quantity of water as it thus flowed to his wheel? It seems clear to us that he could not; and if he could not, then the plaintiffs stand in no better position.

Again, before the death of Mr. Blanchard, and after *Doering* had converted the turning shop and sash factory, which formerly stood on the premises, into a grist-mill, which, it appears from the complaint, he did immediately after his purchase in June, 1862, we hear nothing of any opposition or complaint by Mr. Blanchard that the water was measured as it had ever before been, at the wheel. And again, after Mr. Blanchard's death in April, 1863, and until the grist-mill was burned in the month of November of that year, we hear nothing of any opposition or complaint on the part of the present plaintiffs. It was not, so far as appears from the present record, until the new mill was erected, or being erected, in 1864, and accurate arrangements were made for measuring the water at the wheel, that any objection was ever taken to that mode of measurement, and it was then first made by these plaintiffs. The new mill was put up and completed at an expense of several thousand dollars, which will be an almost total loss to the defendants in

case the extraordinary remedy afforded by the writ of injunction shall prevail. The question is, ought it to prevail?

We are fully persuaded, under the circumstances of the case as now presented, that it ought not; but as much of the evidence offered by the defendants upon the question was improperly excluded by the court, and as the same seems to have been entered upon but very slightly on the part of the plaintiffs, we shall remand the cause for a new trial, in case the plaintiffs shall be so advised by their counsel.

In the examination of authorities upon this question, we have found none more nearly in point than the case of *Sprague v. Steere*, 1 Rhode Island R. 247. In that case the plaintiff based his claim for relief by injunction upon the language of a deed which he himself had made, and which clearly sustained his claim. It was a bill in equity to compel the defendant to lower his mill dam, and to restrict the flowage of the plaintiff's land to the limits expressed in the grant. The plaintiff had granted the mill site and water privilege, with power to flow his land within certain limits, which limits had been exceeded, and his lands beyond flowed. This had been done with his knowledge, and without any objection on his part until after the dam, mill and machinery had been erected and put in operation. The period of time, however, during which his land had been flowed, was not very long. It was not more than four or five years. The court dismissed the bill, and turned the plaintiff over to his remedy at law, on the ground of acquiescence. Story's Eq. Jur. 959 *a*, is cited by the court, where it is said, that no injunction will be granted to restrain a nuisance by the erection of a building, where the erection has been acquiesced in or encouraged by the party seeking the relief; nor will it be granted in cases of gross laches or delay by the party seeking the relief to enforce his rights, as, for example, where, in case of a patent or copyright, the patentee has lain by, and allowed the violation to go on for a long time, without

objection or seeking redress. And a case is also cited from 2 Cases in Equity Abridged, 522, 523, which is reported in that book as follows: " A. diverted a water course, which put B. to great expenses in laying of sooths, etc., and the diversion being a nuisance to B., he brought his action, but an injunction was decreed upon a bill exhibited for that purpose, it being proved that B. did see the work when it was carrying on and connived at it, without showing the least disagreement, but rather the contrary. *Taylor v. Short*, in Lord SOMERS' time, was cited, which was: Short built a fine house; Taylor began to build another, but laid part of his foundation upon Short's land. Short, seeing this, did not forbid him, but, on the contrary, very much encouraged it; and when the house was built he brought an action; and Lord SOMERS granted an injunction, and said: It was just and reasonable, for, being a nuisance, every continuance is a fresh nuisance, and so he would be perpetually liable to actions, which would be hard, when he was encouraged by the party himself."

It would seem from these cases, which were bills in equity filed by the parties committing the nuisance to restrain proceedings in actions at law brought by the parties injured by it, that acquiescence may sometimes constitute ground, as well for affirmative relief in equity against the party acquiescing, as for dismissing his application when he seeks redress against the other party.

Similar relief was granted in *The Trenton Bank v. McKelway*, 4 Halstead's Ch. R. 84, where the defendant was perpetually enjoined from bringing ejectment for portions of a lot which he owned, over which a raceway had been constructed, on the ground that he made no objection to it, but, as the president and one of the acting managers, took part in the direction of the proceedings of the company by which the raceway was located and constructed over the lot. The complainants, however, having offered in their bill to pay the value of the lot, an issue was ordered to ascertain the value.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for further proceedings according to law.