City of Logansport v. Uhl et al.

Filed April 2, 1885.

* * *

No. 11,989.

CITY OF LOGANSPORT v. UHL ET AL.

WATERCOURSE.—*Injunction.*—*Mills.*—*Estoppel.*—Where the owner of a water power stands by, and, not objecting, permits a city, without first assessing and paying his damages, to erect works for a water supply by drawing water from the stream and thus diminishing his power, he creates an equitable estoppel, so that he will not be protected by injunction, but will be left to assert his rights at law.

SAME.—*Pleading.*—Where, in such case, the general scope and prayer of the complaint shows that it was intended to obtain relief chiefly by injunction, it will, if not sufficient for that purpose, be held bad on demurrer, without considering whether it might be sufficient to warrant other relief.

From the Cass Circuit Court.

*D. P. Baldwin, D. D. Dykeman, W. T. Wilson, G. C. Taber, J. C. Nelson* and *Q. A. Myers*, for appellant.

*D. B. McConnell, R. Magee, S. T. McConnell, D. C. Justice* and *C. E. Taber*, for appellees.

NIBLACK, J.—This was a suit for an injunction. The complaint was filed on the 5th day of February, 1883, and, by amendment, became a complaint in two paragraphs:

The first paragraph was as follows:

"Dennis Uhl and Charles H. Uhl, plaintiffs, complain of the city of Logansport, and the trustees of the water-works of the city of Logansport, to wit: William H. Johnson,

Thomas Austin and Alfred U. McAllister, and respectfully
show to the court that the plaintiffs are partners, doing busi-
ness under the firm name and style of D. & C. H. Uhl; that
they are now, and have been for many years, engaged in the
business of manufacturing flour upon the banks of the Eel
river, in the city of Logansport, in said county; that as such
partners, and as a part of their partnership assets, the plaintiffs
are the owners of the following described water-powers, wa-
ter-rights, mill-races, mill-dams, and real estate on Eel river
in the said county of Cass, and State of Indiana, to wit:
The present and existing dam across Eel river, opposite Elm
street, and below the covered wooden bridge at the end of
Bridge street, in the city, which flows the water of said river
back to the foot of what was formerly Hamilton & Taber's
mill-race, and now owned by the defendant, the city of Lo-
gansport, and all the water-power, and water-rights from
the said Hamilton & Taber mill-race to the mouth of Eel
river, together with a mill-race and all the real estate be-
tween Eel river and the south side of Front street in said
city, from the said dam to the mouth of Eel river, together
with all the privileges and appurtenances thereto belonging.
Also a three-acre tract of land at the foot of their said mill-
race, bounded and described as follows: Beginning at a stake
at the mouth of Eel river, the original corner of three sec-
tions of land granted to Joseph Barron, Sr., in Cass county;
thence north along the east line of the said grant or reserva-
tion, five (5) chains and forty (40) links, to a stone on the
said line; thence south forty-six (46) degrees west five
(5) chains and thirty-eight (38) links to a stone; thence
five (5) chains and fifty (50) links to the Wabash river;
thence up the said river, with the meanders thereof, to
the place of beginning, the said lands being a part of the
water-power on said Eel river; that the plaintiffs are the
owners in fee of all the water-power, water-privileges, and
water-rights on Eel river from the mouth of the said Ham-
ilton & Taber mill-race to the mouth of said Eel river; that

they have been the owners thereof for more than twenty years immediately past, and have been in the peaceable enjoyment of the same, they and their grantors, for more than fifty years; that they are the owners, except as hereinafter stated, of a valuable dam on the said stream of water, upon which they have expended ten thousand dollars; that they and their grantors have constructed a mill-race from the said dam, down and along the said Eel river, upon their aforesaid lands, with head-gates, at a cost of the full sum of ten thousand dollars; that at the mouth of the said race, upon their said real estate, the plaintiffs have constructed large flouring mills, and supplied them with valuable machinery; that they have erected suitable and valuable houses for storing grain, as also other necessary and suitable buildings to be used by them in their said business; that the said buildings cost the plaintiffs, and are of the value of, thirty thousand dollars; that for the past twenty-five years the plaintiffs have used, operated and enjoyed the same in the manufacture of flour, feed, and in storing grain and other property; that the said water-power, improved as aforesaid, together with the mills, machinery and buildings thereto attached, are of the value of one hundred thousand dollars; that the defendant, the city of Logansport, is a growing manufacturing city, and the plaintiffs' said water-power, water-rights, and property aforesaid, are within the corporate limits of the said defendant; the said city is also a great railroad center, within whose corporate limits are extensive railroad offices and shops, in the operation of which great quantities of water are used by the several railroad companies operating the same, all of which water is furnished and sold by the said city, defendant, to the said companies, through her water-works to be hereinafter mentioned, and for these reasons, the said water is rapidly increasing in value, and plaintiffs aver that they have never at any time relinquished any of their rights to nor interests in the said water, water-powers, water-rights and water-privileges to any person or corporation.

"Plaintiffs further aver and charge that since the making of the aforesaid improvements, to wit: In the year 1876 the defendant, the city of Logansport, purchased from Messrs. Cecil & Wilson the upper contiguous water-power, including the mill, mill-race, upper dam, and all the privileges and the appurtenances to the same belonging, being the same formerly owned by Hamilton & Taber, for the purpose of constructing and maintaining, appurtenant thereto, water-works, ostensibly for fire protection, and to supply citizens with pure water; and that in pursuance of the said purpose the said defendant erected upon the lands purchased of Cecil & Wilson, and now is maintaining and operating her contemplated water-works, on Eel river in the said city, immediately above the plaintiffs' aforesaid property, consisting of a pump-house, with all needed machinery, deep wells, and water pipes, extending from the said pump-house and wells into all parts of the said city of Logansport, by means whereof the said defendant is daily and continuously drawing and diverting from the said Eel river, above the plaintiffs' said dam and water-power, immense quantities of water, to wit, ———— gallons, twenty-five horse-power per day, which said water is permanently diverted from the said Eel river and never returned thereto; that the defendants are now, and have been for more than five years immediately past, diverting each and every day, from the said Eel river, above the plaintiffs' said property, fully ———— gallons, the same being equal to twenty-five horse-power, which said water is sold to sundry and divers citizens of the said city of Logansport for sundry purposes, for which the defendant, the said city, has received and still annually receives ten thousand dollars; that the defendant, the city of Logansport, is threatening, and intends to and will maintain and operate said water-works, and permanently divert the water of Eel river as aforesaid forever; that the quantity of water thus permanently diverted from the said Eel river is yearly increasing as the said city increases in population, as manufactories increase in numbers and capac-

City of Logansport *v.* Uhl *et al.*

ity, and as the demands of the citizens for water increase; that there is great danger of the defendants, ultimately and before many years, diverting such large quantities of water from Eel river in the manner aforesaid as to materially injure and damage the plaintiffs' said water-power, and finally destroy it.

"Plaintiffs also aver that they are preparing to use and utilize part of their said water by selling or leasing all of the same not now utilized and used by themselves to manufacturers who contemplate erecting extensive manufactories upon the said property, and are now intending and are ready to do so, but are prevented from so doing by the aforesaid wrongful acts of the defendants, to the annual damage of the plaintiffs in the sum of two thousand dollars.

"Plaintiffs also aver that they have not, nor has either of them, nor has any of their grantors, at any time, in any manner, granted the defendants, nor anybody else, in any capacity, their consent, permission, license, or privilege in any manner or form, to divert any water from Eel river above their aforesaid property, nor has either of the defendants, in any manner, at any time, acquired the right to divert water from said Eel river above the plaintiffs' aforesaid property.

"While the plaintiffs hereby and at all times deny the right of the defendants or anybody to divert water from the said Eel river without plaintiffs' consent, they hereby consent that the defendants may, through their said water-works, at times of fire and for the purpose of suppressing fires, divert the water from said river in all needed quantities for said fire purposes. They do this as citizens of Logansport interested in her prosperity, and willing thus to contribute to the public good in times of public calamity.

"Plaintiffs also aver that after the completion of the said works, the defendant, the city of Logansport, duly established, according to law, a board of three trustees of the said water-works; that the aforesaid William H. Johnson, Thomas Austin and Alfred U. McAllister are the duly elected, quali-

fied and acting trustees of the water-works of the city of Logansport aforesaid, and hence are made defendants of this action. Wherefore the plaintiffs pray that upon the final hearing of this cause, the defendants, their agents and their employees be perpetually restrained and enjoined from diverting water from said Eel river, at any time, except during times of fire for fire purposes, and that the plaintiffs have all other proper relief."

The second paragraph repeated, in a general way, but more in detail, the facts contained in the first paragraph, with the additional averments that the plaintiffs never became aware of the extent of the injury inflicted upon them until a short time before the commencement of this suit, and that the city of Logansport had never, by resolution, ordinance or otherwise, fixed or determined the amount of water it desired or intended to divert from Eel river to supply its water-works, so that the plaintiffs had been unable to take the initiative to have their damages assessed.

Demurrers to both paragraphs of the complaint were severally overruled, and issues were then formed upon them.

At the hearing, the circuit court made a general finding for the plaintiffs, and decreed that, unless the city of Logansport should, within the period of one year thereafter, cause the plaintiffs' damages to their mill property to be assessed, the defendants would, after the expiration of that time, stand and be enjoined from diverting water from Eel river, except for the purpose of extinguishing fires.

Error is first assigned upon the overruling of the demurrer to the first paragraph of the complaint, and in support of that assignment of error it is argued that upon the facts averred in that paragraph the appellees have been guilty of *laches* in the enforcement of their right to an undisturbed flow of water in Eel river, and have practically estopped themselves from all claim to relief by injunction by their delay in the commencement of this action.

In response to that argument, it is contended that the ap-

pellees' right to an unobstructed flow of water in the channel of Eel river, above their mill, is one so firmly secured to them by the Constitution that it can neither be abridged nor taken away from them except by proper proceedings to assess their damages, or by the adverse use of the water for a period of twenty years, and that hence no *laches* can be imputed to them in consequence of their delay in bringing this action. It is also contended that the paragraph in question is good as a complaint for, at least, nominal damages, as well as a complaint to have the appellees' title quieted. But the paragraph made no demand, and did not purport to be a complaint for damages; neither was any question of adverse title presented by the facts it contained. The appellees and the city of Logansport are shown to be riparian proprietors of land, under undisputed titles, upon the same watercourse. As applicable to such riparian proprietorships, Washburn on Easements and Servitudes, at page 286 (3d ed.), says: "Now the rights of a riparian proprietor of land, over which there is a flowing stream of water, are to use it for any and all lawful purposes, while it is passing, in its natural current, over his land. But the specific water that may be thus passing is not his property except through its use; nor has he a right to detain it otherwise, since the rights of all riparian proprietors upon any stream, in respect to the waters thereof, are in the eye of the law, equal and the same. The obligation of any one of these to suffer it to flow to the proprietor below is equally stringent and imperative as his right was to have it flow to him from the proprietor above."

The right of a riparian proprietor to have the water in the stream above flow to him is usually denominated a "natural easement," but it is not strictly an easement, since an easement rests upon some supposed grant or title by prescription. It is rather a natural right *incident*, and not *appurtenant*, to the land. It is, however, an absolute and inseparable incident to the land, which can only be lost by grant or by twenty years adverse possession. Washb. *supra*, 21, 287.

The city of Logansport, by its purchase of the upper mill-dam, mill-race, water-power and appurtenances, which had formerly belonged to Hamilton & Taber, succeeded to all the rights pertaining to an upper mill-owner on the same stream with the appellees. Where two or more owners of mill property upon the same stream shall have severally occupied their premises with hydraulic works of art, each has the right to make use of the water in a reasonable manner, having reference to a like right in the other or others, and to the rights of other riparian proprietors, and when a question arises as to what ought to be considered such a reasonable use, it becomes a matter for judicial inquiry.

Washburn, referring to these relative rights of mill-owners, on page 347, further says: "A large proportion of the cases, where conflicting rights are set up by such mill-owners to the use of water, will be found to have been determined by the application of this broad rule of what is a reasonable use in view of the circumstances of each particular case. What a reasonable use of water may be, in any given case, depends upon the subject-matter of the use; the occasion and manner of its application; its object, extent, necessity, and duration; and the established usage of the country, the size of the stream, the fall of water, its volume and velocity and prospective rise and fall,—all of which are important elements to be taken into account in determining the question." We have said this much on the subject of the rights of riparian proprietors and mill-owners upon the same stream to illustrate more thoroughly, that upon the facts stated in the paragraph of complaint under consideration, no question of title was presented, but that the only question which arose upon those facts was whether the city of Logansport had made, and was likely to continue to make, an unreasonable, and hence wrongful, use of the water flowing in Eel river above the appellees' mill-privileges, which the parties were and are entitled to use in common between them. Gould Waters, sections 205, 206,

207, 208, 209; Goddard Easements, 296, et seq.; Angell Watercourses, sections 93a, 444, et seq.

It has been held, and often-times reiterated by this court, that the sufficiency of a complaint must be judged of, and issues upon it formed, with reference to some particular theoretical right of recovery, and that the theory upon which a pleading has been framed must be determined from the general tenor and scope of its averments. W. U. Tel. Co. v. Reed, 96 Ind. 195; Sims v. Smith, ante, p. 469.

The general tenor and scope of the paragraph before us show it to be in the nature of a complaint for an injunction, and the relief granted at the final hearing was upon the theory that the complaint, as a whole, constituted a complaint for an injunction. The paragraph, therefore, must be considered as a complaint for an injunction, and an injunction only.

The granting or refusal of an injunction rests, in each particular case, in the sound discretion of the court. An injunction ought not, therefore, to be granted when it would be against good conscience, or productive of great hardship, oppression or injustice, or of public or private mischief. 1 High Inj., section 15; Goddard, supra, 368; Sheldon v. Rockwell, 9 Wis. 158; Pettibone v. LaCrosse, etc., R. R. Co., 14 Wis. 479; Cobb v. Smith, 16 Wis. 692; 2 Barb. Ch. Pr., section 608, n. 4; Owen v. Field, 12 Allen, 457; Reddall v. Bryan, 14 Md. 444.

The discretion thus conferred in proceedings for an injunction must, it is true, be exercised according to the recognized principles of equity jurisprudence, but it is nevertheless a discretion to be used in promoting the ends of justice and a sound public policy.

As regards the effect of unreasonable delay in bringing suits of the class to which this belongs, Pomeroy in his work on Equity Jurisprudence, states the doctrine to be, "Acquiescence in the wrongful conduct of another by which one's rights are invaded, may often operate, upon the principles of and in analogy to estoppel, to preclude the injured

party from obtaining many distinctively equitable remedies to which he would otherwise be entitled.    This form of *quasi* estoppel does not cut off the party's title, nor his remedy at law; it simply bars his right to equitable relief, and leaves him to his legal actions alone." Section 817.

This doctrine of acquiescence as a *quasi* estoppel is one of general application in proceedings to restrain the wrongful acts of another, and to which effect has been given in numerous cases arising out of controversies concerning the use, or right to use, water in flowing streams.    But to make acquiescence effective to such an extent, it must necessarily have been voluntary, and with knowledge of the wrongful acts complained of, and of their probably injurious consequences.

High on Injunction states the rule to be that " One who has by his own acts consented to or acquiesced in the use of water in a particular manner, will be estopped from afterwards enjoining its use in that manner.    Thus, where complainant without objection has stood by and allowed defendant to erect a mill in violation of the terms of his grant to defendant of the right to use the water in a particular manner, he is by his silence debarred from any relief against such diversion of the water.    *    *    *    *    *    *

" Upon similar principles it is held that long acquiescence on the part of the proprietors of a water-power in a certain measurement of water to which defendants are entitled, will preclude the proprietors from obtaining relief by injunction against such measurement or use of the water, especially where erections have been made by defendants at considerable expense, which would be almost a total loss in case the injunction should be granted.    So acquiescence on the part of plaintiffs in the deprivation of water, which they afterwards seek to enjoin, may estop them from obtaining relief in equity: Thus, where defendants were entitled by an act of parliament to use water from plaintiffs' canal for a particular purpose, but for no other, and they had been for many years permitted by plaintiffs to use the water for other purposes, and [who ?] then

City of Logansport v. Uhl et al.

sought to enjoin such use, an interlocutory injunction was refused, even though plaintiffs had established their right by an action and judgment at law.    And when it is sought to enjoin defendants from keeping their dam closed in such manner as to prevent the flow of water to plaintiff's mill, but plaintiff has delayed proceedings for a period of more than three years after the erection of the dam, he will not be allowed an injunction.    And the fact that the damages sustained may be recovered at law affords additional ground for refusing equitable relief in such case."    1 High Inj., sections 884, 885.

In the case of *Attorney General* v. *New York, etc., R. R. Co.,* 24 N. J. Eq. 49, it was held that where the construction of an important public work has been permitted to proceed almost to completion, in full view of all the parties who could be affected by its construction, and large expenditures have been made, and liabilities incurred, and no action is taken to prevent the progress of the work for more than fourteen months, a court of chancery would not enjoin the further prosecution of the work.

In the case of *Traphagen* v. *Jersey City,* 29 N. J. Eq. 206, it was further held that where a suitor seeks to have a public improvement enjoined, he must not only show that some right secured to him has been violated, and that he has no other adequate remedy, but he must also apply promptly, and that where, by his *laches,* he has made it impossible for the court to enjoin his adversary without inflicting great injury upon him, an injunction will be refused, and he will be left to pursue his ordinary remedy at law.    A similar doctrine was announced in the cases of *State* v. *Paterson,* 40 N. J. L. 244, and *Rettinger* v. *Passaic,* 45 N. J. L. 146.    Kerr on Injunctions (star p. 201) declares that " Parties who, possessing full knowledge of their rights, have lain by, and by their conduct have encouraged others to expend moneys or alter their condition in contravention of the rights for which they contend, can not call upon the court for its summary interference."

This doctrine has been recognized by this court in general

terms by the cases of *Palmer* v. *Stumph,* 29 Ind. 329, *Hellen-kamp* v. *City of Lafayette,* 30 Ind. 192, and *City of Lafayette* v. *Fowler,* 34 Ind. 140. See, also, the case of *Ricketts* v. *Spraker,* 77 Ind. 371, and the authorities there cited.

In commenting, however, upon the first three of these last named cases, it is insisted by the appellees that they are in principle, and hence in legal effect, overruled by the more recent case of *Cox* v. *Louisville, etc., R. R. Co.,* 48 Ind. 178, in which it was held that a land-owner, abutting upon a street in the city of Lafayette, was entitled to an injunction against a railroad company, to restrain it from the use of the street until his damages were assessed and paid, where the application was made many years after the appropriation of the street and the construction of the company's line of road. But in that case no question was made upon the delay in bringing the suit, and nothing was either said or decided touching the effect of Cox's long acquiescence in the wrongful acts of which he complained. The case was made to turn upon another and wholly different question. It is only fair to assume that if Cox's acquiescence had been interposed as an objection, it would have been held that his application came too late. It is further insisted that, under our code, the question of the plaintiff's unreasonable delay in the commencement of his action can not be raised by a demurrer to the complaint, and the case of *Harper* v. *Terry,* 70 Ind. 264, is relied upon as sustaining that construction of the code. In that case, it was reaffirmed that where lapse of time is relied on as a defence to an action, it must generally, under our code of procedure, be pleaded as a defence, and be based upon some statute limiting the action. That is undoubtedly the proper construction of the code when lapse of time is relied upon in an ordinary action as a *defence,* but the enforcement of a right by injunction constitutes what is known as an " extraordinary remedy," and the rules governing ordinary civil actions are not in all respects applicable. In a case like this, lapse of time is neither technically nor in any proper sense a

matter of *defence.* It is of the essence of the application, that it has been made within proper time, and when it is shown upon the face of the complaint that there has been unreasonable delay, advantage may be taken of that infirmity in the application by demurrer.

It is further insisted that as the right of the appellees to have their damages assessed before any water could be lawfully diverted from the channel of Eel river, was a right reserved to them by the Constitution, it was one which could not have been impaired by any lapse of time less than twenty years, and that, in consequence, the doctrine of the text-writers and decided cases on the subject of acquiescence in the deprivation of ordinary property rights, to which we have referred, has no application to this or any similar case.

Any merely personal right reserved by the Constitution may be as readily waived as any other well recognized right. Every suitor is entitled under the Constitution to a speedy trial, but it is a right which may be waived by asking for and obtaining a continuance of his cause. In all criminal prosecutions, the accused has a constitutional right to a public trial by an impartial jury in the county in which the offence with which he is charged may have been committed, and yet he might consent to a secret trial and to be tried by a jury entertaining prejudices against him. A failure to object to a juror, at the proper time, on account of his partiality, operates as a waiver of the accused's right to complain that the juror was not impartial. *Adams* v. *State, ante,* p. 244; *Murphy* v. *State,* 97 Ind. 579.

The applying for and obtaining of a change of venue amount to a waiver of the right to be tried in the county in which the offence was committed. *Butler* v. *State,* 97 Ind. 378.

The accused may also waive his right to be furnished with a copy of the charge against him by failing to demand that he be supplied with a copy. He may waive his right to have the witnesses meet him face to face by consenting that their depositions may be taken and read at the trial. After a ver-

dict has been rendered against him, he may waive his right not to be again put in jeopardy for the same offence by moving for and obtaining a new trial. On what theory, therefore, can it be maintained that the right of the appellees to have their damages assessed before any injury was inflicted upon them may not be as readily waived as those guaranteed to a person under a prosecution involving perhaps his life or his liberty? We know of none, and accordingly hold that the appellee's right to purely equitable relief was one which was liable, from the first infringement, to be lost by unreasonable delay in its enforcement.

Upon the facts stated, to which we are required to give a construction, the appellees have been, and are likely hereafter to be, injured by the diversion of water by the appellants from the channel of river above them. This right of a riparian proprietor or mill-owner to have the water flow to him from the stream above is one which may be taken into account in the assessment of damages to real estate to which it is incident. Washb. supra, 446; Gould Waters, section 245.

The appellees might, therefore, at the proper time, have caused the city of Logansport to be enjoined from diverting water from their mills until their damages were assessed and paid. Sidener v. Norristown, etc., Turnpike Co., 23 Ind. 623; Cox v. Louisville, etc., R. R. Co., supra, and authorities there cited. How long this equitable remedy remained open to them we need not now inquire, since such an inquiry is not necessarily involved in the decision of this cause. The inference is plain that the appellees had knowledge of every step taken by the city of Logansport looking to the erection and maintenance of its water-works, and of the consequent diversion of water which was likely to ensue. With this knowledge, no resistance seems to have been made. This justifies the conclusion that the acquiescence of the appellees in all that was done pertaining to the water-works was, in all respects, a voluntary acquiescence, and has been for a length

of time and under circumstances which utterly preclude any claim to equitable relief by injunction. Nothing, therefore, of a remedial character remains to the appellees except their right to compensation for damages presumably already and hereafter to be sustained. .

This right to compensation may be enforced either by actions for damages or by causing their damages to be assessed under section 909, R. S. 1881, which, in its general scope and spirit, extends to both lands and water taken for water-works under the right of eminent domain. As to the measure of damages in a case like this, reference is made to the case of *Cowdrey* v. *Inhabitants of Woburn*, 136 Mass. 409.

The following cases are also cited as having a bearing on some of the questions discussed in this opinion : *Goodin* v. *Cincinnati, etc.; Canal Co.*, 18 Ohio St. 169 ; *Birmingham Canal Co.* v. *Lloyd*, 18 Vesey Jr. 514 ; *Rochdale Canal Co.* v. *King*, 2 Sim. N. S. 78 ; *Thomas* v. *Woodman*, 23 Kan. 217 (33 Am. R. 156) ; *Burden* v. *Stein*, 27 Ala. 104 ; *Morris, etc., R. R. Co.* v. *Prudden*, 20 N. J. Eq. 530 ; *Jones* v. *City of Newark*, 3 Stockton, 452 ; *Bowman* v. *Wathen*, 42 U. S. S. C. (1 How.) 189 ; *Blanchard* v. *Doering*, 23 Wis. 200 ; *McQuiddy* v. *Ware*, 20 Wall. 14 ; *Haight* v. *Price*, 21 N. Y. 241 ; *City of Logansport* v. *LaRose, ante*, p. 117.

No argument has been submitted upon the sufficiency of the second paragraph of the complaint. We, consequently, make no formal ruling upon its sufficiency.

As the judgment appealed from seemingly rests upon both paragraphs, it will in any event have to be reversed for error in overruling the demurrer to the first paragraph.

If the circuit court shall be called upon to reconsider the question of the sufficiency of the second paragraph, it will keep in view the principles and conclusions herein above announced.

The judgment is reversed, with costs, and the cause re-

manded for further proceedings not inconsistent with this opinion.

Filed Feb. 19, 1885.

### ON PETITION FOR A REHEARING.

NIBLACK, J.—There were two trials of this cause in the circuit court, the first resulting, as did the second, in a finding and judgment in favor of the appellees.

After the first judgment was entered, the appellants asked for, and as an alleged matter of right, and over the objection of the appellees, obtained, an order setting it aside and granting a new trial in the cause, upon the theory that the proceeding was, in its main features, an action to quiet title to real estate.

Upon the completion of this appeal, the appellees assigned cross errors upon the decision of the circuit court thus setting aside the first judgment and granting a new trial.

Accompanying their petition for a rehearing, the appellees have submitted an argument elaborately repeating and earnestly emphasizing their original assumption that this was primarily an action to quiet title, and only incidentally for an injunction. They claim, in connection with other arguments, that as the appellants participated in the first trial, and obtained a new trial as an alleged matter of right on that theory, they are now precluded from asserting that the action was not to quiet title, and that we are hence constrained to consider it here as an action prosecuted for the principal purpose of quieting title. But it is by the general tenor and scope of the pleadings, and not by what may have been said or done at the trial, that the real nature of the action must be determined.  See *W. U. Tel. Co.* v. *Reed, supra,* and *Sims* v. *Smith, supra.*

For the reasons given at the former hearing, we adhere, with unabated confidence, to the conclusion then reached, that this was simply and only a suit for an injunction, and not, in any just or proper sense, an action to quiet title to real estate.

The appellees, conceding our possible adherence to our former conclusion that this was not an action to quiet title, contend, with apparently much confidence, that our theory as to the essential nature of this action leads us, inevitably, to a reversal of the judgment last rendered, and of the order granting a new trial as a supposed matter of right, and to an affirmance of the first judgment. When, however, a judgment is reversed for error intervening, the reversal extends back to and includes the first available error in the proceedings below. In this case the first error with which we were confronted was the overruling of the demurrer to the first paragraph of the complaint, and to reach that error all subsequent proceedings had to be annulled and set aside.

It is further contended that upon the facts averred it ought not to have been inferred that the appellees had notice, for any considerable length of time before the commencement of this suit, of the great and increasing amount of water which the appellants intended to use, and were likely to divert from the channel of Eel river, and that hence we erred in holding that the appellees had acquiesced for an unreasonable time in the diversion of the water complained of before commencing this proceeding for relief.

This argument is based, seemingly, upon a confusion of some of the facts testified to at the trial, with the averments of the first paragraph of the complaint. As has been stated, that paragraph charged that at the time it was filed the appellants were, and for more than five years then last past had been, daily and continuously, diverting large quantities of water from Eel river, equal in force to twenty-five horsepower, and it was from that allegation that our inference as to the fatal acquiescence of the appellees was drawn.

The petition for a rehearing is overruled.

Filed April 4, 1885.