Loy v. Madison, etc., Gas Co.

## LOY ET AL; v. THE MADISON AND HANCOCK GAS COMPANY ET AL.

[No. 19,183.   Filed Dec. 13, 1900.   Rehearing denied March 12, 1901.]

INJUNCTION.—*Against Gas Company for Failure to Supply Gas.— Evidence.*—A gas company entered into a contract with plaintiffs. and others to furnish each of them gas for dwelling purposes so long as a sufficient amount of gas would flow from the company's well.  A few years thereafter the company gave notice that it would cut off the gas, claiming that the flow was no longer sufficient to supply the plaintiffs.  *Held,* that plaintiffs are not entitled to an injunction restraining the company from cutting off the gas in the absence of a showing that plaintiffs had no other means of heating or lighting their dwellings.

From the Madison Circuit Court.  *Affirmed.*

*W. A. Kittinger, E. D. Reardon* and *W. S. Diven,* for appellants.

*E. B. Goodykoontz, G. M. Ballard* and *B. H. Campbell,* for appellees.

JORDAN, J.—Appellants, plaintiffs below, sought to enjoin the defendant gas company from cutting off their connections with its gas mains and thereby preventing the flow of natural gas from the defendant's gas well into the dwelling-house of plaintiffs to be used for fuel and illuminating purposes.  A trial by the court resulted in a judgment in favor of the defendant.  The only error assigned is that the court erred in denying plaintiffs' motion for a new trial. The question urged by appellants in this appeal is that under the evidence the lower court ought to have awarded them the injunction for which they prayed in their complaint.

 This action was instituted on the 11th day of September, 1897, and the facts averred in the complaint appear to be in substance as follows:   The defendant, the Madison and Hancock Gas Company, is a corporation organized and doing business in the counties of Madison and Hancock in

the State of Indiana, and is the owner and controller of a certain gas well situated on the farm of one Henry W. Mingle, and the said company is engaged in supplying gas from the aforesaid well to consumers. On December 9, 1889, the defendant entered into a contract with the plaintiffs, Flavius M. Pritchard, Sarah Pritchard, and others, whereby it agreed, for the sum of $700 paid, to furnish each of the plaintiffs with a sufficient amount of natural gas, as long as a sufficient amount would continue to flow from said gas well, for the purpose of heating and illuminating their respective houses, and also for the use of one lawn burner at each house, and agreed to lay two miles of one inch pipe for the use of plaintiffs for the sum of $560. This contract, together with one denominated in the complaint as the "second contract" between the parties, is referred to, and both are made exhibits in the complaint and were introduced in evidence upon the trial. The pipe lines were laid by the defendant, and plaintiffs' dwelling-houses were thereby connected with the gas well in question, and each of them has been using gas from said well for said purposes. Among other things it is averred in the complaint that there is gas sufficient still flowing from said well to furnish gas to plaintiffs for heating and illuminating their said houses. It is charged in the complaint that the defendant has threatened to cut off the flow of gas from said well to plaintiffs' houses, and if it is not enjoined it will on September 15, 1897, carry out said threat, and that thereby irreparable injury will result to plaintiffs, they having no other means prepared for heating and illuminating their houses. A temporary restraining order is asked, and upon the final hearing of the cause it is prayed that the defendant be perpetually enjoined from disconnecting plaintiffs' gas mains from the aforesaid well.

The contracts in controversy are as follows: A. "December 9, 1889. This is to certify that the Madison and Hancock Gas Co. have this day agreed to furnish to the L. J. P.

Gas Co. of nine persons, namely, Charles Darnell, Henry Iford, A. W. Oldham, Leonard Foust, Daniel Iford, Jesse Reason, Flave Pritchard, Sarah Pritchard and Wm. Brown, for the sum of $700, a sufficient amount of gas for heating and lighting one house each and one lawn burner each as long as a sufficient amount of gas continues to flow from its well which is located on the southeast corner of the farm now owned by Henry W. Mingle. And said M. & H. G. Co. further agrees to furnish and lay two miles of one-inch pipe or its equivalent for the sum of $560. Witness our signatures. Albert C. Wood, President, Frank P. Jackson, Secretary." B. "December 9, 1889. This is to certify that we, the members of the L. J. P. G. Co., have this day entered into a contract with the Madison and Hancock Gas Company to which we agree to pay the sum of $77.77 each for the right and privilege of hitching to the mains at the road running east from the schoolhouse number five, in Fall Creek township, and extending said main two miles or less as may be deemed best by said company and using gas therefrom in sufficient quantities for heating and lighting one house and one lawn burner as long as gas continues to flow in sufficient quantities from its well which is located on the southeast corner of the farm now owned by Henry W. Mingle, and further agree to pay to the Madison and Hancock Gas Co. the sum of $560 for the two miles of pipe line laid down and ready to hitch to, and we further agree to haul said pipe from Pendleton and distribute the same along the line. We further agree that the Madison and Hancock Gas Company shall have the right to tap the lines to furnish such persons with gas who may not be permanently located or are not otherwise able to take gas other than by the year and that all persons who may hereafter take a right of gas they shall pay their pro rata share in said pipe lines. And we further agree that in case gas should become scarce or the supply insufficient for all purposes, we will shut off lawn burners. We further agree to keep said lines in good repair, and

further agree that if by accident the well or the machinery or pipe lines of the said M. & H. Gas. Co.. should get out of order we will give said company a reasonable length of time to repair such defects.   Witness our signatures together with the description of land upon which said house is situated.   Situated in Madison county, Indiana, the northeast corner of the southeast quarter of section twenty-eight, township eighteen north of range seven east, containing fifty acres more or less.   Charles Darnell."   Here follow eleven other signatures with a description of the sites of their respective houses.

Counsel for appellants contend that the sole question to be determined under the evidence is whether the gas well in controversy was furnishing and would continue to furnish gas in a sufficient amount for heating and illuminating each of their respective dwellings.   Upon the contrary, counsel for appellee insist that the contract entered into between the parties to this action can only be interpreted to mean that appellee would continue to furnish gas to appellants so long only as gas flowed from its well in a sufficient quantity for the use of its consumers as they existed at the time of the execution of the contract in controversy.   It is insisted that this question became one of fact, which the trial court, under the evidence decided adversely to appellants, and, inasmuch as there is evidence to sustain the finding of the court, it is contended that the judgment below, under a well settled rule of appellate procedure, can not be disturbed.

We have fully read and considered the evidence as certified, and, among other things, it may be said to establish the following facts:   Appellee is a corporation, organized in August, 1889, under the laws of this State, for the purpose of sinking and operating gas and oil wells and selling the products therefrom.   The operation of the company is confined to Fall Creek township in Madison county and to Green township in Hancock county, and its capital stock is $5,000 divided into 200 shares of $25 each.   It is provided

in its articles of association that each subscriber to the capital stock to the amount of $300, being the price of twelve shares, upon the payment of such sum of money, or so much thereof as may be required by the board of directors, shall be entitled to the free use of sufficient gas for heating and illuminating his family residence or his farm situated along appellee's line. Appellants, it seems, are persons residing on farms in the vicinity of the gas well owned and operated by appellee. The latter owned and controlled but a single well, which was situated on the farm of Henry W. Mingle. There were some thirty-seven families that were furnished gas from this well. These consumers appear to have been classed by appellee company as follows: (1) Stockholders of the company; (2) persons to whom the right or privilege to use gas had been sold; (3) persons who were merely renters of gas by the year.

The gas well in controversy, it seems, originally furnished plenty of gas to all consumers. Its pressure was 330 pounds, but during the years of 1896 and 1897 this pressure was reduced until it fell to fifty pounds and under. Salt water which accumulated in the well very much interrupted the flow of gas. During the winters of these years the gas from the well became so scarce that there was not enough to furnish all of the consumers along the line, and a portion of such consumers, some of appellants being among the number, in cold weather, were compelled to resort to the burning of wood for fuel. On August 18, 1897, appellee, through its officers, gave written notice that it would, on September 15th following, disconnect appellants' service-pipes from its gas well, for the reason that the flow of gas therefrom had so diminished that there was no longer sufficient gas to supply appellants under their contract. The evidence does not disclose that the number of consumers was in any manner increased after the execution of the contract in suit, but, for aught appearing, the number remained the same after its execution as before. There is no evidence to establish that

appellants, if denied the equitable relief which they demand in their complaint, would suffer any irreparable damage. In fact, there are no facts proved by the evidence which show that they had no wood or other fuel or means, as averred in their complaint, for heating and lighting their houses in the event they were deprived by appellee of the use of gas from the well in controversy. Notice, it seems, had been given by appellee to appellants a month prior to the 15th day of September of the year mentioned, that the appellee company would cease to furnish gas for the reasons stated in said notice. There is no evidence to show that appellants, under the circumstances, could not have readily adjusted themselves to the loss of gas, in the event they were cut off, as threatened, or that if appellee carried its threat into execution they would be subjected to such injury as could not be adequately remedied in an action at law against appellee for damages for a breach of its contract. In fact it may be said that under the circumstances in this case there is nothing to show that the apprehended injury is of such a character or nature as not to be susceptible of adequate compensation in damages at law.

Appellants ask us, under the evidence, to construe the contract in dispute, and hold that thereunder they were each entitled to be furnished with gas so long as it flowed from the well, regardless of the duty, if any, which appellee owed to other persons who were its patrons at the time of the execution of the contract in question, and so continued to be, and regardless also of the rights of such consumers under their contracts with appellee. If we are to interpret the contract in the light of the circumstances existing at the time of its execution, in respect to its continuance or duration, we are certainly, under the evidence, not in a position to do so, as we are not apprised in regard to the character, terms, and provisions of all other contracts into which appellee had entered with persons who were its patrons at the time it contracted with appellants.

The granting or refusal of an injunction rests in the sound discretion of a court of equity, and ought not, as a general rule, to be granted, when under the circumstances it would be against good conscience or productive of great hardship. *City of Logansport* v. *Uhl*, 99 Ind. 531, 50 Am. Rep. 109.

It is not essential in the determination of this appeal that we attempt to construe the contract in suit, as the judgment below must necessarily be affirmed for the reason, as previously stated, that appellants, under the evidence, have wholly failed to show that they are entitled to any equitable relief. The case was instituted and prosecuted to prevent appellee by injunction from violating its contract with appellants to furnish them gas. The universal test in such cases is the inadequacy of the legal remedy of damages for a breach of the contract. 3 Pomeroy's Eq., §1341; 2 High on Inj., §§1106, 1107, 1109.

The authorities affirm that, to warrant a court of equity in interfering, not only must the injury apprehended as a result of the violation of the contract in question be of such a nature as not to be susceptible of adequate compensation in damages at law, but the contract itself must also be free from doubt and not uncertain or vague in its terms or provisions. 2 High on Inj., §1106.

We are not to be understood as asserting that a court of equity will not interpose, when invoked in cases like the one at bar, and grant relief by injunction upon a proper showing, but what we do assert is that the evidence in this case is not sufficient to show that appellants are entitled to the injunction sought. It may also be said that no question of corporate or public duty upon the part of the appellee is involved in this appeal. The general scope and prayer of their complaint discloses that the principal relief which they seek is an injunction, and such a complaint, if not sufficient for that purpose, will be held bad on demurrer, regardless of the fact that it may be sufficient to warrant other relief,

City of Logansport v. Uhl, 99 Ind. 531. The rule is well settled that a suitor under a complaint for equitable relief will fail at the hearing thereof unless he presents a case upon the facts which entitle him to equitable relief. Story's Eq. Pl. §453; Kriechbaum v. Bridges, 1 Iowa 14; Rutherford v. Williams, 42 Mo. 18; Humphreys v. Atlantic, etc., Co., 98 Mo. 542, 10 S. W. 140. This principle does not militate against, but is in harmony with, the well settled rule that where a court of equity has once acquired jurisdiction over the subject-matter of the action, it will retain such jurisdiction until complete justice has been done between the parties. It follows, and we so conclude, that the judgment below, under the evidence, is a correct result, and is therefore affirmed.