J. W. ZELIFF, Respondent, v. ADAM N. SCHUSTER *et al.*, Appellants.

Kansas City Court of Appeals, June 13, 1888.

1. FRAUDULENT CONVEYANCES—HOW FAR APPLICABLE TO CREDITORS —EVIDENCE OF INTENT.—Although the statute of frauds respecting the fraudulent transfer of property by a debtor applies to subsequent as well as existing creditors of the grantors, yet the law is, that it requires stronger evidence of a fraudulent intent on the debtor's part in the case of subsequent creditors than as to existing creditors.

2. PRACTICE—COMPETENCY OF EVIDENCE—FAILURE TO OBJECT IN TRIAL COURT.—The party who lets in evidence which is not competent in the trial court without objection, and having himself brought it before the jury and predicated an instruction upon it, cannot first complain of it here.

APPEAL from Atchison Circuit Court, HON. CYRUS A. ANTHONY, Judge.

*Affirmed.*

Statement of case by the court.

This is an action of interpleader in an attachment suit. The evidence showed that for a year or so prior to April, 1885, the firm of Long & Littel were engaged as partners in the mercantile business at Dotham, Atchison county. They also had a branch store at the town of Fairfax. The business at Fairfax was run by the interpleader Zeliff, as the agent of Long & Littel. The sign over the door of the Fairfax store was, "Cheap Cash Store," with the name of J. W. Zeliff underneath it.

In the month of April, 1885, Zeliff claims to have bought out the interest of Long & Littel in the Fairfax store, and that thereafter he conducted the business solely in his name, Long & Littel having no interest whatever therein. Long & Littel continued in business as theretofore, at Dotham.

Interpleader's evidence tended to show that, at the time of this purchase by him, he had advanced funds in the business bought out by him, and that the firm, and Long individually, were owing him other moneys. In the trade, made more particularly between him and Long for the firm, these debts owing to Zeliff went in as part payment of the purchase money ; and for the residue of the purchase price, Zeliff executed to Long, who was his father-in-law, two negotiable promissory notes, one for two hundred and fifty dollars, due six months after date, the other for three hundred and twenty-five dollars, due one year after date. The goods so bought invoiced at $771.74. Thereafter Zeliff, as his evidence tended to show, continued to do business, keeping separate book accounts and purchasing goods from parties and shipping the same, in his name, until he had expended about fifteen hundred or sixteen hundred dollars for additional goods, which were in the store at the time of the levy of the writ of attachment, hereinafter mentioned. His evidence tended to show other acts of a change of possession of said store and its business.

On the first-named note Zeliff paid one hundred and twenty-five dollars, and thereupon Long gave him up the note as paid. On the other note Zeliff had made no payment when the attachment was served. For debts contracted by Long & Littel, in conducting their mercantile business at Dotham, after the imputed sale of the Fairfax store to Zeliff, the plaintiffs, Adam N. Schuster *et al.*, brought suit, and sued out writs of attachment in aid thereof, and seized the stock of goods in the Fairfax store as the property of Long & Littel. This was in November, 1885. Thereupon Zeliff interpleaded in said attachment suit, claiming the goods as aforesaid. The attaching creditors claim that the reputed sale to Zeliff was only colorable and fraudulent as against the creditors of Long & Littel.

The attaching creditors' evidence tended to show that, after the reputed sale, Long & Littel bought goods from various parties for the store at Dotham. Long &

Littel continued to make payments and preserve their credit until the fall of 1885, representing that their business was in a thriving condition. They also introduced evidence of statements made by Zeliff which indicated that he had not bought out Long & Littel at the time he claims; and there was also evidence as to statements made by Long touching the question as to whether he had negotiated the unpaid note of Zeliff, which is sufficiently noticed in the opinion. There was also some evidence tending to show that, in the summer of 1885, Long & Littel were seen about the Fairfax store, as if concerned in it; but there was no tangible proof of any sales of goods made by them, or of the exercise of control over that store by them.

There was other evidence, *pro* and *con.*, but not of sufficient importance to be stated. The jury found the issues for the interpleader.

LANCASTER, THOMAS & DOWE, for the appellants.

I. It is not necessary that a vendee shall have actual knowledge of the fraudulent intent of his vendor. If he has knowledge of facts sufficient to put a man of ordinary prudence upon inquiry as to the intent of his vendor, he is a party to the fraud and the sale is void as against the creditors of the vendor. *Rupe v. Alkire*, 77 Mo. 641; *Stern Co. v. Mason*, 16 Mo. App. 473; *Frederick v. Allgaier*, 88 Mo. 598.

II. If such knowledge comes to the vendee before the payment of the purchase price, the sale is void as against the vendor's creditors. *Dougherty v. Cooper*, 77 Mo. 528; *Arnholt v. Hartwig*, 73 Mo. 485; *Young v. Kellar*, 94 Mo. 581.

III. The giving of negotiable notes for the purchase price is not payment unless the notes are negotiated before maturity, or paid before notice of the vendor's fraudulent intent, or of facts sufficient to put the vendee upon inquiry. *Arnholt v. Hartwig*, 73 Mo. 485; *Paul v. Fulton*, 25 Mo. 163, 164; *Young v. Kellar*, 94 Mo. 581.

IV.   The levy of a writ of attachment on the property in the hands of a vendee is notice to him of the fraudulent intent of the vendor.   *Dougherty v. Cooper*, 77 Mo. 528 ; *Arnholt v. Hartwig*, 73 Mo. 485.

V.   It is error to give instructions which comment on the evidence, or single out particular facts and circumstances, and point out to the jury their weight or probative force.   *Kendig v. Railroad*, 79 Mo. 207 ; *Shaffner v. Leahy*, 21 Mo. App. 110 ; *Weil v. Schwartz*, 21 Mo. App. 372.

VI.   It is error to give instructions based upon a series of facts as to some of which there is no evidence. *Bank v. Overall*, 16 Mo. App. 510 ; *Skyles v. Bollman*, 85 Mo. 35 ; *Pipkin v. Haucke*, 15 Mo. App. 373.

VII.   It is error to give instructions that are calculated to mislead or confuse the jury.   *Donahoe v. Railroad,* 83 Mo. 560 ; *Chouteau v. Iron Co.*, 82 Mo. 73 ; *Greer v. Parke*, 85 Mo. 107.

VIII.   It is error to give contradictory, conflicting, or inconsistent instructions.   *Frederick v. Allgaier*, 88 Mo. 598 ; *Stevenson v. Hancock*, 72 Mo. 612.

IX.   Where there is a total failure of evidence to support the verdict, the appellate court will reverse the judgment.   *Whitsett v. Ransom*, 79 Mo. 260.

X.   Section 2505, Revised Statutes, relating to change of possession of personal property, applies in favor of prior as well as subsequent creditors.   *Knoop v. Distilling Co.*, 26 Mo. App. 303.

XI.   The change of possession of personal property from the vendor to the vendee must be open, notorious, and unequivocal ; such as will apprise the public without inquiry.   *Burgert v. Borchert*, 59 Mo. 80 ; *Wright v. McCormick*, 67 Mo. 426 ; *Stern v. Henley*, 68 Mo. 262.

XII.   The facts shown in this case do not constitute a change in possession, and the court should have so instructed the jury.   *Wright v. McCormick, supra ; Stern v. Henley, supra.*

LEWIS & RAMSAY, for the respondent.

I. There is no evidence of Zeliff's knowledge of any facts making him party to any fraud. The evidence in the case was properly, as to the law, submitted to three juries, who found against the claim of plaintiff.

II. The notes given by Zeliff were paid as to one and the other actually negotiated before the attachment suit.

III. The complaint as to the giving of instructions for interpleader is not justified. It is like the complaint, which was not sustained, in the case of *Kendig v. Railroad*, 79 Mo. 207; see also, *Shaffner v. Leahy*, 21 Mo. App. 110; *Weil v. Schwartz*, 21 Mo. App. 282. No instructions were given for him which were calculated to mislead or confuse the jury; and there was no evidence that Zeliff had knowledge of fraud, or of facts sufficient to put him on inquiry, or that there was any fraud at all as against plaintiff.

IV. There is no conflict in the instructions on the part of plaintiff, or in all the instructions of both sides taken as a whole.

V. It is only where there is a total failure of evidence to support the verdict that the appellate court will reverse the judgment. Here all the evidence sustains the verdict.

VI. As to the law of instructions see, *Mathews v. Elevator Co.*, 59 Mo. 474; *Karle v. Railroad*, 55 Mo. 476; *Whalen v. Railroad*, 60 Mo. 323; *Ins. Co. v. Hurck*, 83 Mo. 21.

VII. As to the law concerning change of possession, we agree to what is said, but the evidence shows a compliance with all requirements in letter and spirit.

PHILIPS, P. J.—The instructions in this case are unusually numerous, presenting every possible phase of the questions which ordinarily arise in such trials. The appellants asked twelve, and the court gave ten of them.

One of the two refused was in the nature of a demurrer to the evidence ; and everything valuable in the other was embraced in other declarations of law given. When the proper view of the facts is taken in this case, it will at once become apparent that the appellants had the benefit of issues and propositions of law much more favorable to them than the law warrants.

I. It may be conceded to appellants that the statute of frauds respecting the fraudulent transfer of property by a debtor applies to subsequent as well as existing creditors of the grantor. *Harmon v. Morris*, 28 Mo. App. 326; *Knoop v. Dist. Co.*, 26 Mo. App. 303. Yet the law is, that it requires stronger evidence of a fraudulent intent on the part of a debtor in the case of subsequent creditors than as to existing creditors. *Zeikel v. Douglass*, 88 Mo. 382. The debts in question here were contracted subsequent to the debt of the sale as claimed by respondent. That sale, as between the vendors and the vendee, was good. To avoid it, it devolved on the attaching creditors to show two facts, first, that it was intended on the part of the debtors to defraud subsequent creditors, and second, that Zeliff had knowledge of that fact, or participated in such fraudulent design, or that he had not paid the whole of the purchase money when the attachment was brought, or that the negotiable note given by him had then been negotiated.

II. This case manifestly was tried on the same theory as if the debts in question were existing at the time of the alleged purchase by Zeliff. Had it been tried on the proper theory, it is difficult to discover from the evidence in this record any fact that would have warranted a jury in finding, even against Long & Littel, that at the time of the sale to Zeliff they had it in contemplation to defraud any future creditor. There was no proof tending to show that at the time they were insolvent. They continued in business thereafter, paying their debts contracted for the purchase of goods in the usual course of trade. There was no substantial evidence showing

that they had obtained any fictitious credit upon the faith of any representations made by them that they owned the Fairfax store. These very attaching creditors, with as favorable opportunity as Zeliff had, discovered nothing in the conduct of Long & Littel indicating embarrassment, at the time of the reputed sale, for they continued to deal with them on a credit basis. What evidence is there in this record which would justify any jury in finding that at the time of Zeliff's purchase, he had any knowledge of any fraudulent intent on the part of his vendors? It would be the merest speculation and conjecture to indulge such a suspicion. While fraud, from its very character and habits, is difficult of direct proof, and a wide range of evidence and circumstances is indulged in its investigation, yet the court ought not to throw the reins loose upon the course of examination, and permit property rights to be destroyed upon mere suspicion and unreasonable inference.

III. Viewing this case as we do under the evidence, there were really but three issues of fact for the jury to find: first, did Zeliff make the purchase of the goods in question from Long & Littel on or about the time claimed by him? second, did Long & Littel make said sale with intent to hinder or delay their subsequent creditors? and if so, did Zeliff at the time of his purchase have knowledge of such fraudulent intent? or did he acquire such knowledge prior to the payment of the purchase money, or prior to the negotiation of the note or notes given by him for the purchase price of the goods, provided such note or notes had been negotiated at all?

One thing is clear, from the instructions given by the court the jury must have found that Zeliff did make the purchase of the goods as testified to by him; and that all of the purchase money was paid by him before the goods were attached, save a note of three hundred and twenty-five dollars, given by him to Long. As to the second proposition, that issue was fully and clearly submitted by the instructions to the jury, both on the

part of the interpleader and the attaching creditors. Their verdict is conclusive on this court.

But as to the third proposition, although appellants concede that issue was properly submitted to the jury by the instructions, they contend there was no evidence before the jury from which they could infer that the three hundred and twenty-five dollar note had been negotiated at the time of the attachment ; that the only semblance of evidence bearing on this issue was certain evidence introduced at the trial as to what Long had stated on the witness-stand at a former trial herein in a justice's court. Appellants are, however, in no condition to make such objection here. In the first place, Zeliff was permitted in his redirect examination to testify that Long stated he had negotiated the note, and appellants made no objection and saved no exception. Then, on their part, they introduced witness after witness who testified to what Long testified before the justice of the peace respecting this negotiation of the note. Then in rebuttal, the interpleader introduced witnesses who testified that Long did state that he had transferred the note. To this appellants made no objection. Then in the fourth instruction, asked by appellants and given by the court, the jury were distinctly told to take into consideration "the acts, conduct, and statements of said Long & Littel or either of them, both before and after said pretended sale." The statements and declarations of Long, made after the sale to Zeliff, were not competent as against his vendee. *Weinrich v. Porter*, 47 Mo. 293. But the party who lets in such evidence, without objection, cannot first complain of it here. *Schooler v. Schooler*, 18 Mo. App. 79. And certainly he cannot complain of it after having himself brought it before the jury, and predicated an instruction upon it. The presumption in such case is to be indulged, that but for the course encouraged by the complaining party the other party would have offered other and competent evidence of the disputed fact. *Walker v. Owens*, 79 Mo. 567, 568.

IV. We discover no such contradiction in the instructions as suggested by appellants. It is enough to say of the criticism, that some of the instructions singled out unduly particular facts in evidence, that the course pursued by the trial court was quite in harmony with the holding in *Zimmerman v. Railroad*, 71 Mo. 491; and *Nicholson v. Golden*, 27 Mo. App. 133, 154.

V. Three juries have now returned verdicts in this case in favor of the interpleader; and, if properly instructed by the court, we see no reason to suppose that a different result would follow on further trial. The appellants got all the law, and more than they were entitled to, on the last trial; and they should be content.

The other judges concurring, the judgment of the circuit court is affirmed.