THE STATE *ex rel.* LOYD H. REDMON, Respondent, v. GEORGE W. DURANT *et al.*, Appellants.

St. Louis Court of Appeals, April 4, 1893.

1. **Executions**: CLAIM FOR PERSONALTY LEVIED UPON: REMEDY OF CLAIMANT. When personalty levied upon is claimed by a third person under the provisions of section 4927 of the Revised Statutes, and bond is given by the execution creditor as therein provided, the summary proceedings provided by section 4928 is not the only remedy of the claimant; suit will lie on the bond.

2. **Sales**: DELIVERY AS TO CREDITORS OF VENDOR. In the application of the rule as to the kind of delivery required in order that a sale of personalty should not be invalid as to the creditors of the vendor, regard must be had to the nature and situation of the property. But whatever be the nature of the personalty—in this cause it was a standing crop of corn—the delivery should be evidenced by an act of some notoriety, so that the public may be advised of the change of ownership.

3. ———: ———: REASONABLE TIME. In determining what is a reasonable time for such delivery the same rule, that regard must be had to the nature and situation of the property, applies. And *held*, that the question of the reasonableness of the time was, under the evidence in this cause, one of fact for the jury.

4. **Fraudulent Conveyances**: PREFERENCE BY INSOLVENT DEBTOR: EXCESSIVE VALUE OF PROPERTY TRANSFERRED. If a creditor of an insolvent debtor, who already holds security for his claim, thereafter purchases additional property from the debtor with the agreement to apply the proceeds on his claim, and the aggregate value of the property so purchased and of the security so held is materially in excess of the indebtedness, the purchase is fraudulent.

5. **Evidence**: COMPETENCY OF DECLARATIONS OF A CO-CONSPIRATOR. Declarations of a third person are admissible against a party, though not made in the presence of the latter, if there is evidence that they were made in furtherance or aid of an existing conspiracy between such third person and such party.

6. **Instruction Unsupported by Evidence**: ESTOPPEL BY REASON OF COMMON ERROR. A party may object to an instruction, given by the court on an adverse claim, on the ground that it is wholly without the support of evidence, though he himself has asked an instruction submitting the same issue.

*Appeal from the Marion Circuit Court.*—HON. THOMAS H. BACON, Judge.

REVERSED AND REMANDED.

*D. G. Davenport* and *W. M. Boulware,* for appellants.

*R. B. Bristow* and *J. T. Lighter,* for respondent.

BIGGS, J.—This action was begun in the circuit court of Monroe county. It was transferred by change of venue to the circuit court of Marion county, where it was tried. The facts out of which the litigation has arisen are these: On the sixth day of May, 1885, the defendants recovered in the Hannibal Court of Common Pleas a judgment against James E. Bush and Dr. Birney. The judgment was rendered under a stipulation, which provided for a stay of execution until the third Monday in September following. On the tenth day of October, 1885, an execution was issued to the sheriff of Ralls county, and under it a crop of ungathered corn was levied upon as the property of Bush. The levy was made on October sixteenth. The relator, who claimed to have purchased the corn from Bush, delivered a written claim to the sheriff, properly verified and setting forth his title to the corn. Thereupon the defendants executed the indemnifying bond in suit, and the sheriff proceeded with the sale.

The relator's evidence tended to prove that he bargained for the corn from Bush in the latter part of August; that he agreed to pay Bush forty cents per bushel for it, provided he would gather and feed it to relator's cattle during the following fall and winter; and that the proceeds, after paying the rent, which was $350, were to go to the discharge of two notes held by him against Bush, which notes at that time amounted to about $800. At the time of the purchase the relator

thought that the crop would yield about thirty-five hundred bushels. These notes were secured by prior mortgages, which covered all other property owned by Bush. A year or two afterwards the relator foreclosed the mortgages and realized from the sales of the property, which remained undisposed of by Bush, $310. The defense was that the pretended purchase was a sham, concocted by Redmon and Bush to hinder, delay and defraud other creditors of Bush, and especially the defendants whose execution would soon issue; and further, that the pretended sale had not been followed by a delivery of the corn. The jury found the issues for the relator, and returned a verdict against the defendants and the sureties on the bond for $163.41. The defendants have appealed.

I. It is thought and urged by counsel for the defendants that the Hannibal Court of Common Pleas, out of which the execution issued, has exclusive jurisdiction of the subject matter of the suit. This contention is grounded on section 4928 of the statute, which provides that claims of third persons for property levied on under executions, together with the bonds taken under section 4927, should be returned by the sheriff, "to the court to which the execution may be returnable, on or before the first day of the next term thereof, and the clerk shall enter the matter upon the docket, as near as may be, as civil cases are docketed, and the matter shall, unless continued for cause, be tried at the term at which the claim is returned." The section continuing provides for a trial of the rights of property in a summary way, and for special judgments according to the finding of the issues.

Whether this summary remedy is available when the claimant fails to give a forthcoming bond, as he may do under section 4927, is a question on which the members of the court are not in accord. But in any

view we agree that the statutory remedy is not exclusive. If this remedy is not pursued (and it so appears in this case), a right of action on the bond would exist. Section 4927 expressly so provides.

II. The plaintiff's third instruction which the court gave reads:

"The court instructs the jury that the taking possession of the property in controversy, to-wit, a crop of standing corn, does not necessarily mean the bodily taking of the property into the custody of the party claiming possession, but that any acts done, if any, by the purchaser, tending to show a change of ownership of the property, or declarations, if any, made concerning it in connection with any such acts, if any, while so claiming possession, are to be considered by the jury in determining the question of possession. And the jury are further instructed that, if they find from the evidence that relator Redmon in good faith bought the corn in controversy about the last day of August or first of September, 1885, although they may believe from the evidence that the said Redmon did not take possession of said corn, that he had a right to leave the corn standing upon the premises where grown a reasonable length of time, regard being had to the condition and situation of the property at the time of the purchase; and the jury are the sole judges of the fact as to whether relator Redmon did or did not leave the corn in controversy standing in the field a reasonable or unreasonable time, regard being had to the situation and condition of the property under the evidence."

This instruction as written was erroneous, because there was no evidence of any such delivery of the corn to the relator as is contemplated by the statute. (Section 5178 of the Revised Statutes, 1889.) It is useless to quote the statute or the authorities construing it. It is settled in many decisions that, to satisfy the law, the

change of possession, to be effectual, must be accompanied by some open or notorious act unequivocally indicative of the change. In the application of the rule as to the time within which the delivery must be made, and the kind of possession, regard must be had to the nature and situation of the property. But, whatever be the nature of the property sold, the delivery, when made, should be evidenced by an act of some notoriety, so that the public may be advised of the change of ownership. Especially is this necessary where the vendor, as in this case, is to remain in possession of the property. The evidence was to the effect that the relator met Bush on the road in the latter part of August, and bargained for the corn; that nothing else was said or done until about the first of October, when the relator visited the farm where the corn was growing, and that he and Bush walked through it. This is the only evidence that even squints at a delivery. Of course the relator could not take manual possession of the corn, because it was unmatured; besides, under the contract, Bush was to gather and feed it to relator's cattle. But the farm was situated in a thickly settled community, and sufficient notoriety could have been given of the sale and delivery, if the parties had seen proper to do so.

In the case of *Chase v. Ralston*, 30 Pa. St. 539, the delivery of some logs was involved. The possession of the logs was delivered in the presence of witnesses, and the logs were marked by stamping the vendee's peculiar mark on each log. It was held that, considering the nature and situation of the property sold, the delivery was sufficient. Judge PORTER, who delivered the opinion of the court, said: "If possible the delivery must be actual; if the nature and bulk of the article preclude this, then it must be constructive, a better term, I think, than symbolical, borrowed from the

ancient ceremony of feudal investiture. In every case, every species of divestiture which can give the world notice should be resorted to."

Our supreme court recognized and acted on this principle in the case of *Stewart v. Nelson*, 79 Mo. 524. There Bergstrom, the interpleader, claimed to have purchased a lot of railroad ties from Nelson and Aspland. The evidence showed that after the sale Bergstrom put a red dot on each of the ties, and left them in possession and under the control of one of the vendors. The court held that there was no delivery.

Mr. Bump, in discussing the delivery of ponderous articles or property, not susceptible of actual delivery and removal at the time of the sale, says: "The vendee must assume the control and do all that an honest man would reasonably be expected to do to advertise the public of the sale. * * * Every species of divestiture which can give the world notice should be resorted to." Bump on Fraudulent Conveyances [3 Ed.] pp. 164, 165, 166.

But it is urged that the appellants' instruction also submitted the question of delivery, and that by reason of this they are estopped from saying that there was no evidence in support of the issue. If there was any evidence on the subject, however slight, the point would be well taken. But we cannot conceive how instructions can be made to take the place of evidence, that is, supply an entire failure of proof. *Straat v. Haywar*, 37 Mo. App. 585.

The relator by the express terms of the statute had a reasonable time within which to take possession of the corn, its nature and condition being considered. Under the authority of *State to use v. King*, 44 Mo. 238, 241, we think that it was for the jury to say in the present case whether under the circumstances an unreasonable length of time had intervened between

the alleged purchase and the levy under the execution. Therefore, we cannot declare the sale to be void as a matter of law.

III. The court of its own motion instructed the jury as follows:

"On the other hand, if from the evidence the jury find that prior to said levy said James E. Bush was justly indebted to said Loyd H. Redmon, and that, in order to realize his said debt, if any, the said Redmon in good faith bought said corn to be credited on said indebtedness, if any, the said Redmon had the right to so collect said debt, whatever may have been the motives or intentions of James E. Bush, secret or expressed, in said transaction. And if from the evidence the jury so find that prior to said levy the said Redmon was such creditor of said James E. Bush, and that said Redmon in good faith so bought said corn to save such debt, and that prior to said levy the possession thereof had been delivered to and retained by him, or that said levy was made before the lapse of a reasonable time for said delivery under such sale, if any, regard being paid to the situation of the property, the jury will find for the plaintiff."

Redmon undoubtedly had the right to take the corn in satisfaction of his debt. If he took no more than was reasonably necessary to pay it and the rent, when the value of the property held by him under the mortgages is considered, the law will protect him in the preference, although Bush may have intended to cheat his other creditors, and the relator had knowledge of it. *Sexton v. Anderson*, 95 Mo. 373. But if the relator took corn, the value of which, when added to the value of the mortgaged property, was materially in excess of what was necessary to satisfy his notes and the rent, then the sale of the corn was fraudulent and the relator must be held to have participated in the

fraud. *McVeagh v. Baxter*, 82 Mo. 518; *Meyberg v. Jacobs*, 40 Mo. App. 128. Under the instruction, if Bush owed Redmon anything, the sale of the corn was valid, regardless of its value. That is not the law in this state. The instruction was erroneous and clearly prejudicial, because the evidence is conflicting as to the amount of the indebtedness and the value of the corn.

IV. After the levy by the sheriff, Bush and the relator were passing the house of William Wood. The latter was in his barn lot. Bush went into the lot to talk with Wood, the relator remaining in the road. The defendant offered to prove by Wood that Bush on that occasion, in talking with him about the sale of the corn, said in substance that if he (Wood) should buy the corn at the sheriff's sale, he would have to take it over his (Bush's) dead body; that it was his corn. The court, on the objection of the plaintiff, excluded this conversation. In doing so, we think it committed error. The general rule undoubtedly is that the declarations or admission of the vendor subsequent to the sale are not evidence against the vendee, unless made in his presence. This rule, however, ought not to prevail here, for the reason that there was independent evidence tending directly to prove a conspiracy or combination between Bush and Redmon to place the corn beyond the reach of the defendants' execution. This, under a well-recognized exception to the rule, made the declarations of Bush, in furtherance of the conspiracy or in aid of its fulfillment, competent evidence against the relator, whether he was present or not. Waite on Fraudulent Conveyances, sec. 280; 1 Greenleaf on Evidence, sec. 111; *Jones v. Simpson*, 116 U. S. 609; *Cuyler v. McCartney*, 40 N. Y. 221; *Spies v. People*, 10 West Rep. 701; *Meredith v. Wilkinson*, 31 Mo. App. 1; *Zeliff v. Shuster*, 31 Mo. App. 493.

There are objections urged to other instructions and the admission of other evidence, which we do not think necessary to notice. What we have said is believed to be sufficient to indicate our views of the controlling question.

The judgment of the circuit court will be reversed, and the cause remanded. All the judges concur.