STATE OF MISSOURI at the Relation of LLOYD H. REDMAN, Appellant, v. GEORGE W. DURANT *et al.*, Respondents.

St. Louis Court of Appeals, February 23, 1897.

**Sale of Personal Property Without Delivery:** STATUTE OF FRAUDS. A sale of personal property unaccompanied by delivery, either actual or symbolical, is within section 5178, Revised Statutes, 1889, of the statute of frauds, and void as to creditors.

*Appeal from the Marion Circuit Court.*—Hon. Reuben F. Roy, Judge.

Affirmed; all the judges concurring, Judge Biggs in the result.

*G. W. Whitecotton, J. W. Boulware,* and *R. B. Bristow* for appellant.

The relator had reasonable time within which to take possession of the corn, regard being had to its nature and condition, under the very terms of the statute. *State to use v. King,* 44 Mo. 238; and, under the evidence, this question should have been submitted to the jury. Biggs, J., in this case on former appeal, 53 Mo. App. 498.

The effect of Bush's death could only exclude relator's testimony as to the contract proper, and not to exclude him entirely as a witness in the case, or beyond cavil relator was a competent witness to the amount and value of the corn taken by the sheriff, as Bush was no party to that. *Poe v. Domec,* 54 Mo. 119; *Martin v. Jones,* 59 *Id.* 181.

Omitted points of respondent's brief (original brief, nor name of attorney furnished).

If the sale be considered as one for money it was invalid as to the execution creditors, because of the nonpayment of the purchase price before the levy of the execution. To render such sale valid it is necessary that the purchase price be actually paid before attachment or levy; the execution by the purchaser of his note or check is not sufficient. *Young v. Kelley,* 94 Mo. 581.

In case of absolute sale, the amount of the property must not be greater than reasonably sufficient to

pay the debt. If greater the transaction is a fraud upon the creditors, and void, not as to the excess, but in its entirety. *McNichols v. Rubelman*, 13 Mo. App. 515; *State ex rel. v. Hope*, 102 Mo. 410; *Webb v. Ingrahan*, 1 S. E. Rep. 816.

BLAND, P. J.—This case is here the second time by appeal. The opinion on the first appeal is found reported in 53 Mo. App. 493. On the second trial, at the close of the evidence on the part of the plaintiff, the court gave an instruction in the nature of a demurrer to the evidence, whereupon the plaintiff took a nonsuit, with leave to move to set the same aside. This motion he filed in due time, and this being overruled, and exceptions taken, he appealed to this court.

The case as presented by the present record, presents, briefly stated, the following state of facts: In October, 1885, the defendants took out an execution from the Hannibal court of common pleas, on a judgment they had against one James E. Bush, and levied upon a crop of corn in Ralls county, as the property of Bush, grown upon the farm of one Trabue. This levy was made October 15, 1895. Bush had leased the farm from Trabue, and had planted and cultivated the corn levied upon, and was in possession of the farm and corn at the date of the levy. Redman filed with the sheriff, who made the levy, a written demand for the corn, and notice that he claimed it as his property. Thereupon defendants gave the bond sued on (an indemnifying bond, under the statute). Bush and Trabue were both dead at the time of the trial. Trabue's evidence or the substance of it, however, was agreed to and read at the trial. Plaintiff, to sustain his right of recovery, claimed to be the owner of the corn at the date of the levy, by virtue of a previous sale of it, made by Bush to him. The evidence tend-

ing to prove this sale was substantially this: That Redman held the notes of Bush for about $800; that in the latter part of August, or early in September, 1885, Redman, with his son, and Bush, met in a public road, had a conversation (apart) which the son did not hear, and when they were through with the conversation, they came to the son, and Redman remarked, in the presence and hearing of Bush, that he had bought Bush's corn at forty cents per bushel, to be fed on the Trabue farm, and Bush remarked he had sold it in that way. Trabue's testimony was that he; agreed with Bush and Redman to look to Redman for his rent, and agreed that Bush might feed the corn crop to Redman's cattle on the farm, and that he would release his landlord's lien on the corn, and take a lien on the cattle of Redman for the rent. James T. Bush testified that he was the father of James E. Bush, and that his son told him, before the levy of the execution, that he had sold his crop of corn to Redman, at forty cents, and that he was to feed it out. John Dyer testified that Bush told him, in the presence of Redman, that he had sold his crop to Redman, at forty cents, and that he had to feed it out for Redman on the farm. The evidence also tended to prove that after the alleged sale, Bush made a pond for water on one part of the farm, and did some work toward cleaning out an old one. Redman paid no rent to Trabue. No memorandum in writing was made at this sale, no earnest money was paid, no credit was given on the notes which Redman held against Bush. There was one hundred and twenty acres of the corn crop, estimated at about four thousand, five hundred bushels. Bush was on the farm when the levy of the execution was made and in possession of the premises, including the corn crop. On a close examination of the evidence we have failed to find a

SALE of personal property without delivery: statute of frauds.  single syllable of testimony as to any arrangement about a change of the possession of this corn from Bush to Redman, or as to time when such change, if any, should be made. No evidence that Bush was to hold the corn as the agent of Redman; no evidence that Redman was ever on the premises, or ever saw the corn.   There is a total absence of testimony of delivery, actual or symbolical, or of any time within which, or method by which delivery should be made in the future.   The sale (if any was made) was in the latter part of August, or early in September.   The levy was on the fifteenth day of October.   Ample time between the sale and levy had elapsed in which possession could have been taken by Redman.   The corn being the property of a tenant, was not part of the realty upon which it was grown. It was for all purposes personal property, and if we treat this trade, or supposed trade, between Bush and Redman, as a sale of personal property, then it is within section 5178, Revised Statutes, 1889, of the statute of frauds, and void as to the creditors of Bush.   *Wright v. McCormick*, 67 Mo. 426; *Stern v. Henley*, 68 Mo. 262; *State ex rel. Pierce v. Merritt*, 70 Mo. 275; *Claftin v. Rosenberg*, 42 Mo. 447.

Under the authority of *Stewart v. Berguson*, 79 Mo. 524; *Burgert v. Borchert*, 59 Mo. 80; *Wright v. McCormick* and *Claftin v. Rosenberg, supra*, the evidence being undisputed, it was the duty of the court to decree the sale fraudulent and void as to respondents.   The case was tried upon the theory of a sale.   We do not feel it our duty to discuss it upon another theory, raised by the discussion in respondents' brief, as the result would not be different by accepting that theory of the case.

The judgment is affirmed.   All concur;   Judge BIGGS in the result and writes a separate opinion.

BIGGS, J. (*concurring*).—This case was tried the first time on the assumption that the evidence tended to prove a complete sale of the corn as between Redman and Bush. The matter of contention was as to the validity of the sale against respondents who were execution creditors of Bush. It was claimed that Redman had not taken possession of the corn as required by the statute of fraudulent conveyances. R. S. 1889, sec. 5178. The case was reviewed upon the theory upon which it had been tried. 53 Mo. App. 493. On the second trial counsel for respondents challenged the sufficiency of the evidence to prove a completed sale. The instruction of nonsuit, which the court gave, rests on this.

The claim is that under a view of the evidence most favorable to the relator the negotiations between him and Bush failed to make out a present sale of the corn. In support of this counsel argues with much force and plausibility, that the testimony tends only to show a contract for services and for feeding cattle in the nature of an agistment, and not an agreement for the sale of the corn, for the reason that under the agreement no delivery of the corn as corn was contemplated. I will put this view aside, without attempting to controvert it, and treat the negotiations between Redman and Bush as an attempt to sell the corn itself.

Respondents erroneously attempt to apply as tests to the alleged sale the provisions of the statute of frauds in reference to the sale of chattels, which in substance provides, that no sale of goods, wares, or merchandise, for the price of $30 or upwards, shall be valid, unless all or a part of the goods are delivered and accepted, or unless the buyer gives something in earnest to bind the bargain, or unless a memorandum of the sale is made and signed by the party sought to

be charged. R. S. 1889, sec. 5187. In my opinion the defense of the statute of frauds is personal to the seller and buyer. The statute was passed for the protection of the parties to the sale. They may disregard or waive the requirements if they see proper, and of this others can not complain. The law has been substantially so declared in this state. *Kratz v. Stocke*, 42 Mo. 35; *Galway v. Shields*, 66 Mo. 313. Creditors of the vendor find their only protection in the statute governing fraudulent conveyances. Hence in my opinion the sufficiency of the sale and its character must be determined by the principles of the common law.

The question is, did the title to the corn pass to Redman? If not, his action must fail. The doctrine of the common law in reference to sales is, that if the seller has performed everything that is required of him as seller, and the property is so situated that the buyer may rightfully take possession of it at his pleasure, the title passes. Actual delivery is not necessary. *Williams v. Gray*, 39 Mo. 201; *Southwester, etc., Co. v. Stanard*, 44 Mo. 71; *Hening v. Powell*, 33 Mo. 468. But the converse of this proposition is not always true—that is if something remains for the seller to do, or the immediate delivery of the property is not contemplated the title *does not pass*. The presumption is to that effect, but the presumption may be rebutted by satisfactory proof of a contrary intention of the parties to the sale. In other words, the question of the passing of the title is one of intention either express or implied. Benjamin on Sales, pp. 248–251. As it was a part of the bargain in this case that Bush should gather the corn, and as there was no manifestation of an intention that the title to it should pass to Redman, the presumption becomes conclusive, that it was the intention of the parties that it should not pass. This made the contract executory,—

that is, one for the future sale and delivery of the corn. For the foregoing reasons I think it quite clear that the circuit court was justified in directing a nonsuit.