FERNÁNDEZ ET AL., APPELLANTS, *v.* OLIVENCIA ET AL.,
RESPONDENTS.

APPEAL from the District Court of Mayagüez.

No. 899.—Decided April 1, 1913.

TAXES—STRICT COMPLIANCE WITH TAX LAWS.—All of the essential provisions of
the laws governing the assessment and collection of taxes should be strictly
complied with.

ID.—SALE FOR TAXES—NOTICE TO LIENORS.—Section 315 of the Political Code as
amended by the Act of March 14, 1907, provides that in all cases where real
estate is sold for taxes the treasurer shall give notice thereof in writing, per-
sonally or through their duly authorized agents, to all persons having a mort-
gage or other lien on said property.

ID.—SALE FOR TAXES—NOTICE BY PURCHASE TO LIENOR.—Notice to the mort-
gagee by letter or verbally from the purchaser of real estate sold in payment
of taxes is not valid under the provisions of section 315 of the Political Code
as amended by the Act of March 14, 1907.

ID.—SALE FOR TAXES—DISQUALIFICATION TO PURCHASE.—The son of the owner
and delinquent taxpayer of a property sold for the payment of taxes is dis-
qualified from bidding in the property at the sale or from acquiring it indi-
rectly through a relative or other person who purchased it at the public
auction.

ID.—SALE FOR TAXES—NULLITY OF TITLE.—A purchase made by a son or heir-at-
law of the owner and delinquent taxpayer, either directly or indirectly, is null
and void and the purchaser acquires no title whatever to the property, but
the transaction is merely equivalent to the payment of the taxes by him.

ID.—SALE FOR TAXES—NULLITY OF TITLE—DESCRIPTION OF PROPERTY—AMBI-
GUITY.—When a sale is made for the payment of taxes of a fraction of a
property without describing the part sold, the sale is void because of ambiguity.

FRAUD—CONSPIRACY—EVIDENCE OF FRAUD.—It is not necessary to prove the exist-
ence of fraud in relation to a conspiracy as an independent fact, but it may
be inferred from the deed itself, from the acts of the parties and from the
circumstances attending said acts.

ID.—GROSSLY INADEQUATE PURCHASE PRICE.—A grossly inadequate purchase price
is a circumstance which may be taken into consideration in determining the
existence of fraud.

ID.—CIRCUMSTANCES SHOWING FRAUD.—In this case the circumstances which
should be considered as tending to show the existence of fraud are the manner
in which the auction sale was executed, the knowledge which the defendants
had of the existence of the mortgage and of its record, the fact that the
property was assessed for purposes of taxation at $4,975 and that nearly all
of it was sold for $99.30, it being encumbered by a mortgage for $16,718.74,
and the relationship between the mortgage debtor and the purchasers of the
property.

The facts are stated in the opinion.

*Messrs. José G. Torres* and *José Sabater* for appellants.

The respondents did not appear.

MR. JUSTICE MacLEARY delivered the opinion of the court.

Many years ago Zoilo Olivencia owned a tract of land comprising a coffee plantation in the ward of Palma Escrita in the municipal district of Las Marías, which was called "Candelaria." This tract he mortgaged to a priest named Gabriel González who donated the credit on the second of November, 1903, to the minor plaintiffs in this cause. Zoilo Olivencia died in February, 1903. The defendants herein, José Euclides Olivencia and Antonio Olivencia are respectively the son and grandson of Zoilo Olivencia. The mortgage fell due on December 31, 1900. Taxes and surcharges accumulated on this tract of land to the amount of $99.13, and it was attached for the same and sold on October 29, 1908. It was bought at the tax sale by the defendant, Antonio Olivencia; or at least he purchased 100 acres of said tract at the said auction. On November 4, 1908, the tax collector of that district issued a certificate of sale to the purchaser. The land was not redeemed from the tax sale within the six months allowed by law, and Antonio Olivencia caused his certificate of purchase to be recorded in the Registry of Property of Mayagüez.

It appears from the said certificate of purchase, as registered, that the whole tract consists of 130 acres instead of 116, and that only 100 acres were sold, 30 being reserved. The tax sale was made at public auction, at which there were several bidders. It appears from the registry that by the registration of the tax-sale certificate all former liens, including the mortgage, were thereby canceled. On June 4, 1909, Antonio Olivencia sold and conveyed to his uncle, José Euclides Olivencia, the 100 acres of land which he had previously purchased at the tax sale. The consideration in the deed from one of the defendants to the other, as expressed therein, was $3,000. This deed was also registered at Mayagüez.

Plaintiffs allege in their complaint that all these purchases

and deeds were made in pursuance of a conspiracy between the defendants to destroy their mortgage and deprive them of their property. That no money was paid by José to Antonio; and, in fact, that the former never had that amount of money in his possession. The plaintiffs also allege that no notice was ever given them of the levy made for taxes nor of the sale either by the treasurer, the tax collector or any other authorized person, notwithstanding the fact that the defendants knew of the existence of the lien, shown by the record in their favor, and they further allege that the plaintiffs have been thus damaged by the annulment and cancellation of their rights in the registry of property without an opportunity of making their defenses. The complaint closes with a prayer that the levy and sale for taxes and the notice of the levy and the registration of the tax deed and certificate should each and all be declared null and void, and that the mortgage should be declared to be subsisting in full force and effect; and they also pray for the recovery of costs. The defendants made answer denying the essential allegations in the complaint and alleging new matters by way of defense.

On March 8, 1912, a trial was had in the district court, the parties and their counsel being present and submitting oral and documentary evidence, whereupon the court found the facts substantially as follows, to wit:

1. That the minor plaintiffs, Fernández y Diez, acquired a mortgage credit for the sum of sixteen thousand seven hundred and eighteen dollars and seventy-four cents ($16,718.74), provincial money, by a gratuitous donation, made in their favor by the priest Gabriel González, in a public deed numbered 588, which was executed in Mayagüez, P. R., on November 2, 1903, before the notary, Riera Palmer, which was recorded on December 15, 1903, in the Registry of Property of Mayagüez, in the name of said minors, on folio 237, volume 17, of Las Marías, property No. 381, tenth registration; said mortgage credit having been constituted on a coffee plantation known as Candelaria, with an area of 116 acres of

land, approximately, which is situated in the ward of Palma Escrita in the municipal jurisdiction of Las Marías, P. R., said property being the same which is described in the first paragraph of their complaint. That said mortgage credit was constituted by Zoilo Olivencia y Bobé, who was then the owner of the aforesaid Candelaria property.

2. That said property Candelaria was attached by the collector of internal revenue of Las Marías for failure to pay the taxes thereon and sale ordered at public auction, which was announced by means of notices posted at the collector's office in Las Marías, and an advertisement in one of the Mayagüez newspapers; and, on October 27, 1908, which was the day set for the sale thereof at public auction, several bidders appeared, among whom was the defendant, Antonio Olivencia, in whose favor 100 acres of the aforesaid property were adjudicated for the sum of ninety-nine dollars and thirteen cents ($99.13); the proper certificate of sale having been issued in his favor on November 4, 1908, which was recorded in the Registry of Property of Mayagüez on May 7, 1909, after the term of 180 days had expired within which the property sold might be redeemed according to the law in force. That all former encumbrances established upon the parcel of the 100 acres of land sold at public auction were canceled by virtue of said inscription in the registry, the lien of the minor plaintiffs being therefore annulled.

3. That by public deed executed in Mayagüez on June 4, 1909, before the notary, Robustiano Biaggi, the defendant, Antonio Olivencia, sold the 100 acres acquired at the auction sale to the other defendant José Euclides Olivencia, for the sum of three thousand dollars ($3,000); the receipt of which was acknowledged by the vendor prior to the execution of said deed; said deed of purchase and sale having been recorded in the Registry of Property of Mayagüez on June 11, 1909.

4. It does not appear to have been shown that the Treasurer of Porto Rico, or the collector of internal revenues at

Las Marías, ever notified the plaintiffs or owners of the mortgage credit of the auction sale with regard to the 100 acres of the ·Candelaria property; nor does it appear to have been satisfactorily shown that such notification was not made by the Treasurer of Porto Rico or by the collector.

5. But it appears to have been plainly shown to the satisfaction of the court that José A. Fernández, the father and legal representative of the minor plaintiffs, was notified on October 31, 1908, by the defendant, José E. Olivencia, of the auction sale of the Candelaria property, which took place four days prior—that is, on October 27, 1908.

6. It was also shown that José A. Fernández, father of the minor plaintiffs, had other property at the time of the auction sale of the Candelaria; that he only needed about one hundred dollars to redeem the property and that at that time, October 21 and 27, 1908, José A. Fernández himself redeemed two of his properties which had been sold at public auction.

7. It was also shown that Zoilo Olivencia died on ·February 4, 1903, within the municipal jurisdiction of Las Marías, Porto Rico. That at the time of the auction sale of the property Candelaria, October 27, 1908, José A. Fernández, father of the minor plaintiffs, took charge of the property, José Euclides Olivencia being on said property as a foreman and acting under instructions of said Fernández. That José E. Olivencia and Antonio Olivencia, the defendants, are respectively the son and grandson of Zoilo Olivencia y Bobé, the former of said defendants being an uncle of the other defendant, Antonio Olivencia. These are the facts found by the trial court.

That court held that there were two important points involved in the proper decision of this case, namely: (1) Whether or not the auction sale of the one hundred acres of land belonging to the Candelaria property is null and void, inasmuch as no notification was made thereof in the manner

provided by section 315 of the Political Code, as the same
is amended by the Law of March 14, 1907; and (2) whether
or not there was any conspiracy or fraudulent combination
on the part of the defendants to secure the cancellation of
the plaintiffs' mortgages.   Both of these questions are an-
swered by the trial court in its decision in the negative, thus
requiring a judgment in favor of the defendants.   The ap-
pellants contend that both these points were erroneously de-
cided by the trial court, and specify five errors so alleged
to have been committed, in the language substantially as
follows, to wit:

## I.

The court below erred in considering that the provisions
of section 315 of the Political Code were complied with, as
the same is amended by the Law of March 14, 1907, simply
because the father of the minor plaintiffs may have had know-
ledge or private information that the auction sale of the
property Candelaria had taken place.

## II.

The court below erred in considering that no conspiracy or
fraudulent combination was shown on the part of the de-
fendants.

## III.

The court also erred in not finding that José Euclides
Olivencia was disqualified to purchase the property Cande-
laria at the auction sale, which property belonged to his
deceased father and, therefore, he could not buy it from the
other apparent purchaser, Antonio Olivencia.

## IV.

The court below erred in not finding that the auction sale
of a portion of the Candelaria property is null by reason of
ambiguity, or want of proper description.

## V.

The court below erred in striking out the testimony of the witness, Juan Medina González, in relation to the conduct performed by the collector during the auction sale of the Candelaria property.

We will examine these questions in the order presented in the brief and argument of the appellants.

## I.

While the court below recognizes the validity and force of section 315 of the Political Code as amended by the Act of March 14, 1907, it holds that provisions thereof were complied with from the fact that the father of the minor plaintiffs may have had knowledge or private information that the auction sale of the property Candelaria had taken place under the attachment levied for the taxes and surcharges due upon the same. It sufficiently appears from the record that three days after the auction sale above referred to plaintiffs' father was notified by the defendant, José Euclides Olivencia, that the property had been sold for taxes at public auction and purchased by his nephew, Antonio Olivencia. Is this a sufficient compliance with the statute regulating this matter? The statute referred to provides that in all cases where real estate is attached and sold for the payment of taxes, the Treasurer of Porto Rico shall notify all persons having a mortgage or other lien on said property on record of such sale, and in such notice shall state the date of the sale, the amount for which the property was sold, and such other facts as he may deem advisable. Session Acts of 1907, pp. 339 and 340. These statutes, in regard to the sale of land for taxes, being designed for the protection and security of the citizen, it is essential to the validity of a tax sale of lands that there shall be a strict compliance with all the directions of the statute, both in relation to the observance of any conditions precedent or prerequisite to the

exercise of the power of sale and to the conduct of the sale itself, as well as to the performance of conditions subsequent to the sale. 37 Cyc., 1281 and numerous cases there cited. *Ronkendorff* v. *Taylor,* 29 U. S., (4 Pet.), 348; *Thatcher* v. *Powell,* 19 U. S. (Wheat.) 119; *Williams* v. *Peyton's Lessee,* 17 U. S. (4 Wheat.), 75.

It is generally held by the courts of all the States of the American Union that statutes governing the assessment and collection of taxes must be strictly complied with in all their essential provisions. *Kelsey* v. *Abbott,* 13 Cal., 609; *Ferris* v. *Coover,* 10 Cal., 589, and cases therein cited.

So it is required by the statute above cited that the Treasurer of Porto Rico, either personally or by his duly authorized agent, the collector of taxes, should notify the lien holders of the tax sale, and this notice should be in writing as is clearly implied by the wording of the statute itself; as otherwise such notice could not state the date, amount and other facts which the treasurer might deem advisable in any effective manner. We should not lose sight of the fact that it is provided by the tax law that an attachment for delinquent taxes shall have the effect of a judgment against the property attached. Then we cannot admit that the mere fact that the purchaser at the tax sale, or some other person who has purchased the land from him, can, by a letter to the mortgage creditor, give him the proper notice that an auction sale has been made, subjecting the land to the attachment lien to satisfy the amount of taxes and charges due thereon. Such a notice does not comply with the statute and cannot be considered as valid or binding.

## II.

In regard to the conspiracy or fraudulent combination which is alleged in the complaint to have been entered into by the defendants, was it an error on the part of the trial court to find that no such combination was shown on the part of the defendants? The court, in its opinion, seems to

hold that fraud, if any existed on the part of the defendants, should have been shown as an independent act, and in a conclusive manner. It is true that fraud must be shown by proper evidence and cannot be inferred or guessed at or merely suspected, but the evidence may consist of circumstances surrounding the parties, such as their relation to each other and to the transaction in which the fraud is alleged to have been committed. In other words the fact of fraud can be arrived at by the same process of proof as any other fact in a civil case. It is said by the authorities that it is difficult to lay down a rule as to what amount of evidence is sufficient to show the fraudulent intent of a party against whom a fraudulent combination or conspiracy is charged. The evidence must be taken altogether and be entirely satisfactory—that is to say, it must be sufficiently strong and cogent to satisfy a person of sound judgment of the truth of the charge made in regard thereto. Such fraudulent intent may, however, be gathered from the deed of conveyance itself, from the corresponding acts of the several parties and from all the surrounding circumstances attending the transaction, and need not necessarily be proven as an independent fact. *Bullett* v. *Worthington,* 3 Md. Ch., 99; *Zeliff* v. *Schuster,* 31 Mo. App., 493; *Vandervort* v. *Fouse,* 52 W. Va., 214, 43 S. E. Rep. 112; *Weisiger* v. *Chisholm,* 28 Tex., 780; *Bowden* v. *Bowden,* 75 Ill., 143; 20 Cyc., 799–800.

From the record we may find that there are many signs and circumstances showing or tending to show that there was an agreement between the defendants, or that they had used some means at least to defraud the minor plaintiffs in regard to their mortgage upon the land known as Candelaria; for instance, the manner in which the auction sale was executed, the knowledge which the uncle as well as the nephew had of the existence of the mortgage and its record in the proper registry. These are all circumstances of such a nature that, taken in connection with others similar, a person of ordinary intelligence might reach the conclusion that a

fraud had been committed, and they should be taken into consideration by the court in arriving at a conclusion in regard to the existence of such a fraud. The property Candelaria, upon which the plaintiffs hold the mortgage, was assessed for the purpose of payment of taxes in the sum of $4,975, and Antonio Olivencia at the auction sale purchased 100 acres thereof for the amount of $99.30. Gross inadequacy of price is a circumstance having at least some tendency to show unfairness in the sale of any property. The amount of the mortgage appears to have been $16,718.74. And, moreover, the record shows that the mortgage debtor is the grandfather on the father's side of the person who bought the property at the tax sale, and the father of him who purchased the same from the purchaser at the tax sale; and if the tax sale had been valid and all further requirements of the law had been complied with, the effect would have been the nullifying of the mortgage credit belonging to the minor plaintiffs, and all these circumstances taken together might well be deemed sufficient to justify the court in arriving at the conclusion that there was a fraudulent combination or conspiracy against the rights of the mortgage creditors, as they existed upon the lands at the time of the transactions mentioned. The ruling of the trial court on this question cannot be held to have been correct.

## III.

Did the trial court err in failing to find as a conclusion of law that the defendant, José Euclides Olivencia, was disqualified from purchasing the property Candelaria at the auction sale, because the same belonged to his deceased father, and that he was an owner of an interest therein by reason of his forced heirship; and on that account could not purchase the same from the tax sale purchaser, his nephew, Antonio Olivencia, the other defendant? It clearly appears from the record that the property Candelaria belonged to the delinquent taxpayer and mortgagor, Zoilo Olivencia, and was

recorded in his name in the registry of property. He died. in 1903, and among his forced heirs we find a son who is now the defendant, José Euclides Olivencia. After the death of .the taxpayer this defendant, his son, being a co-owner of the property Candelaria, could not have been a purchaser at the tax sale, inasmuch as he was bound to pay the taxes, and any purchase which he might make would not be deemed to convey title, but would be considered merely a payment of the taxes which were due. It is settled by the authorities that a person who is disqualified from purchasing land at a tax sale, either by reason of his relation to the title or his duty to the owner, will not be allowed to acquire a valid title to such land indirectly by procuring another person to act as the ostensible purchaser at the sale and then taking an assignment of the certificate or a deed of conveyance from such person on refunding him the money expended, or any other sum. *Shay* v. *McNamara,* 54 Cal., 169; *Bernal* v. *Lynch,* 36 Cal., 135; *McAlpine* v. *Zitzer,* 119 Ill., 273; *Montgomery* v. *Whitfield,* 41 La. Ann., 649; 37 Cyc., 1354. We also find this doctrine .clearly announced in the case of *Christy* v. *Fisher,* 58 Cal., 256, in which the Supreme Court of that. State says:

"One who has a moral or legal obligation to pay the taxes is not in a position to become a purchaser at a sale for such taxes; and if such person permits the property to be sold and buys it, either in person or indirectly through the agency of another, he does not. thereby acquire any right or title to the property, but his purchase is deemed a mode of paying the taxes."

Applying the law as here announced to the present case, it is clear that José Euclides Olivencia was bound .to pay the taxes as the forced heir of the delinquent taxpayer, and. by his fiduciary relation was disqualified from subsequently acquiring from the purchaser who bought at the auction sale and who is a grandson of the delinquent taxpayer the property thus acquired.

## IV.

Should the court below have held that the auction sale of the 100 acres taken out of the Candelaria property is null and void by reason of ambiguity or a failure of a proper description thereof? We see from the certificate of sale, which was issued by the collector of taxes of Las Marías to the purchaser at the tax sale, that the entire tract known as Candelaria was not sold, but only 100 acres thereof; neither was there any proper description of the 100 acres which were sold nor of the 30 acres or the 16 acres, as the case may be, remaining to the delinquent taxpayer aside therefrom. Does this fact of ambiguity or insufficiency of description nullify the transaction? We find that this defect was noted by the Registrar of Property of Mayagüez, although as curable, in his ruling, as appears in the note written at the bottom of the certificate in the language following, to wit:

"This document having been recorded at folio 238 and following of volume 17 of Las Marías, the property numbered 781, quintuplicate, 11th registration, which is also one regarding the cancellation of liens, the following curable defects were set forth therein, to wit: (1) That the one hundred acres which were sold are not set forth in the certificate; and (2) that the note appearing in the said certificate, according to which thirty acres remain in favor of the delinquent taxpayer, is not authorized by any official."

It has been held in California by the Supreme Court of that State that if an officer sells a portion of an entire tract and it is described as to quantity but not as to location, the sale will be considered void for uncertainty. *Roberts* v. *Chan Tin Pen,* 23 Cal., 239.

Numerous authorities might be cited to sustain this same proposition but it is so well understood that further references are unnecessary.

## V.

The fifth assignment of error in regard to striking out

the testimony of one of the witnesses concerning acts performed by the collector at the auction sale it is not necessary to discuss, as the whole case is sufficiently developed in the four assignments which we have had under consideration.

Taking into view the errors assigned and hereinbefore discussed with some fullness, we are clearly of the opinion that the trial court erred in the decision of this case and in rendering judgment in favor of the defendants and against the plaintiffs herein. For the errors mentioned the judgment of the court below should be reversed and another rendered in accordance with the principles established in this opinion.

*Reversed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.